JOHN A. McCURDY, RESPONDENT, *v.* THE ALPHA G. & S. MINING COMPANY, APPELLANT.

Usually, a deed passes only what is described in the granting clause; but under modern and liberal rules of interpretation, an explanatory clause or *habendum* of a deed may cause that to pass which could by no possible interpretation be held to have been described in the granting clause of the deed.

Parties usually describe what is intended to be granted in the granting clause of the deed.   And Courts should not interpret deeds so as to carry more than is mentioned in that clause, unless the intent to carry more is clearly shown in other portions of the deed.

An explanatory clause in a deed should not be so interpreted as to be repugnant to the granting clause, especially when there is not necessarily any such conflict.

A deed may be interpreted by the aid of surrounding circumstances, which are known to, and understood by, the contracting parties. A full knowledge of surrounding circumstances may make that intelligible which would otherwise be unintelligible.

THE COURT and not the jury must interpret written contracts. When the existence or non-existence of certain extraneous facts must be ascertained to arrive at a correct conclusion, the Court may submit these facts to a jury. But where all the material facts are admitted by both sides, then the Court must decide.

UPON REHEARING.—The phrase "The interest herein intended to be conveyed," commented on and explained.

APPEAL from the District Court of the First Judicial District, Hon. C. BURBANK, presiding.

The facts are fully stated in the opinion.

*C. J. Hillyer*, for Appellant, made the following points:

The Court erred in refusing to give the third, fourth and tenth instructions asked by defendants. These instructions were for the purpose of giving to the jury a proper construction of the deeds under which the plaintiff claimed; that construction was for the Court, and not the jury.

The Court erred in instructing the jury that they were to construe the deed and ascertain the intent of the parties.

The instructions as given were inconsistent with themselves and with the rulings of the Court in regard to the admission of evidence.

The Court erred in excluding the testimony of John H. Mills, as to the declarations of Coppers and McCurdy.

Parol evidence is not admissible to contradict the terms of a written instrument, but it is always admissible to show the circumstances surrounding the parties, and if there be any ambiguity in the language of the writing it may be explained by parol. Parol evidence was admissible here to identify the Central Ledge, and show whether it was independent of the Gold Hill Ledge, and also to show what was understood by the terms "reach and prospect," in the deed, and to identify what ledges were included in the general clause following the designation of the Central Lode, and whether the Gold Hill Ledge was intended to be included in that clause.

To prove these facts the declarations of Coppers and McCurdy were competent, and indeed, the best evidence. (*Leland* v. *Stone,* 10 Mass. 458; *Reed* v. *Pro. of Locks,* 17 Curtis R. 585; 1 Greenleaf Ev. Sec. 203; 1 Phillips Ev. 546; 1 Metcalf, 380; 13 Pick. 261.)

The admissions of a party are always admissible to prove any fact which may be established by parol evidence. (1 Greenleaf on Ev. Sec. 171.)

The Court erred in rejecting evidence to the effect that plaintiff, whilst prosecuting his work, disclaimed ownership in the Gold Hill Ledge. (*Stanley* v. *Green,* 12 Cal. 162; *Scovill* v. *Griffith,* 2 Kernan, 509; *Earl* v. *Picken,* 5 Car. & Payne, 542.)

The judgment could under no circumstances have been for more than fifty-three feet, for one of the deeds under which plaintiff claims clearly describes only the central and back ledges. As to this deed there is no ambiguity, and therefore the judgment is too large, if not entirely erroneous.

*L. E. Bulkeley,* for Respondent :

The deeds are not ambiguous, and they should have been construed by the Court for the jury; but the construction having been left to the jury at request of appellants, this action is final.

Even if technical errors have intervened, substantial justice having been done, this Court should not reverse the judgment. (*English* v. *Johnson,* 17 Cal. 107; *Merle* v. *Mathews,* 26 Cal. 455; *Alston* v. *James,* 17 Barb. 289; *Winans* v. *Christy,* 4 Cal. 70.)

Plaintiff was entitled to judgment on the pleadings. The pleadings, at most, only deny plaintiff's ownership : they do not deny his right of possession.

The deeds were not ambiguous, and therefore no evidence was admissible to explain them.

Opinion by BEATTY, J., LEWIS, C. J., concurring.

This was an action brought to recover 127 feet undivided interest in certain mining ground in Gold Hill. The circumstances on which the claim is founded, and which are necessary to be known to determine the rights of the parties, are as follows :

On the ninth day of July, 1859, certain parties made the following location of a mining claim at Gold Hill:

That we, the undersigned, claim four claims of 1,200 feet, including quartz and surface, commencing at the Reverend Bennett claim and running north.   This claim lies to the right of Gold Hill, U. T. Feb'y 27th, 1859.

Recorded July 9th, 1859.

T.  A.  HOUSEWORTH.

L.  S.  BOWERS,
F.  D.  CASTEEL,
JOS.  PLATO,
W.  KNIGHT.

Subsequently, three of the original locators, together with Joseph Webb, who had become associated with them, entered into the following contract:

### ARTICLE OF AGREEMENT.

Joseph Webb, Joseph Plato, F. D. Casteel, and L. S. Bowers, with J. H. Mills and P. W. Coppers.   Date, December 16th, 1859. Consideration, 250 feet of ground.

The parties of the second part agree to run a tunnel in a certain mining claim situated above Gold Hill, and joins on Board & Co.'s claim, belonging to the parties of the first part.   We of the second parties agree to run a tunnel till we strike the ledge.   For so doing we of the first part do convey and relinquish all our right of two hundred and fifty feet of ground in the above mining claims.   When the parties of the second part have completed the tunnel to the ledge, then the tunnel shall become the property of both parties of the first and second part.

As witness our hands this day.

JOHN H. MILLS,  ⎫ Parties of the
P. W. COPPERS,  ⎭ second part.

JOSEPH WEBB,  ⎫
L. S. BOWERS,  ⎪ Parties of the
F. D. CASTEEL, ⎬ first part.
J. PLATO,  ⎭

Attest: E. C. MORSE.

Recorded March 25th, 1860.   Book B, p. 175.   G. H. R.

Under this contract Mills & Coppers ran a tunnel for some three hundred feet, and claimed that they had struck the ledge.    At least Mills, one of the joint contractors, claimed that they had. Coppers denies that he made any such claim.    But, be that as it may, the company, after some hesitation, and indeed, strenuous objection by some of its members to the claim asserted, accepted the contract as finished, and allowed the 250 feet to Coppers & Mills. Coppers did not hesitate to accept his 125 feet, although he says he did not claim the contract was finished.

After accepting the contract of Coppers & Mills as finished, and after allowing them their 250 feet, the price of the contract, the company, at its own expense, extended the tunnel one hundred feet west, making the whole tunnel 400 feet in length.

About this time it began to be supposed that back of the ledge located by Bowers and others in July, 1859, and between that and some croppings called Butler's Peak croppings, which lay up the hill considerably to the west, there might be another or other blind ledges.    In order to secure these supposed ledges, the following locations were made in June and August of the year 1860 :

CENTRAL COMPANY.—*Notice.*—We, the undersigned, members of Gold Hill Tunnel Company, have this day located six claims of two hundred feet each on this supposed blind ledge, lying between the Gold Hill ledge and the Back ledge croppings, known as Butler's Peak croppings, and we do each and all of us claim and hold the same proportion in this ledge that we own and are in possession of in Gold Hill Tunnel Company, commencing at this stake and running north, or northerly, twelve hundred feet.

S. BOWERS,<br>
JOS. PLATO,<br>
P. W. COPPERS,<br>
F. D. CASTEEL,<br>
JOS. WEBB,<br>
J. H. MILLS & Co.

Gold Hill, 22d of June, 1860.

Recorded June 23d, 1860.

CHAS. E. OLNEY, Recorder, Pr. Aldrich.

" To all that it may concern : That the Gold Hill Tunnel Company claim twelve hundred feet of each and all ledges in this hill, from the mouth of Gold Hill Tunnel to the Back ledge commencing at Board & Co.'s claims, and run northerly twelve hundred feet.

" Gold Hill, August 14th, 1860."

On the thirtieth of April, 1861, certain members of the company entered into a further contract with Coppers & McCurdy, the present plaintiffs, to make a still further exploration of their claims. This contract was embodied in the deeds of the members of the mining company, each member making a deed for his proportionate interest of the claim, which was to pass upon the completion of the contract by Coppers & McCurdy. We copy from one of the deeds (they were all alike in form) the material part, upon the proper interpretation of which this whole case depends :

"An undivided twenty-five (25) feet of the interest of the said party of the first part in and to the mining ground of the ' Central Company,' located on the 22d day of June, 1860, a full description whereof will be found in book F, page three, (3) of the mining records of Gold Hill District. The interest herein intended to be conveyed to include also and carry along with it an interest of equal extent in all the ledges and lodes in which said party of the first part is owner, and which will be reached and prospected by said parties of the second part, in their continuation of the tunnel of ' The Gold Hill Tunneling Company ; ' said continuation commencing at a point four hundred (400) feet in and from the mouth of said tunnel."

At the time this and other similar deeds were made, the tunnel extended already 400 feet into the hillside, running west towards the Butler's Peak croppings. This tunnel runs for the first four hundred feet through various kinds of matter, some of which seems to be admitted by all intelligent witnesses to be *vein matter*. But the opinion of most of the witnesses who claim to be experts is, that whatever of vein matter was passed through in this four hundred feet of the tunnel was mere *tumble rock*, as they term it : that is, that it was merely part of the vein matter which had fallen from the vein and rolled down the hill. That the true vein confined between the regular wall rocks was not found or explored until it was struck

in the tunnel by Coppers & McCurdy, at a distance of four hundred and twenty feet from its mouth.

These are all admitted facts, with this exception : that the defendants claim that the true vein within its walls was struck within the first four hundred feet of the tunnel ; and that what the plaintiff calls the east wall of the ledge, say four hundred and twenty feet from the mouth of the tunnel, is nothing more than a seam or crack in the ledge.

It is also an admitted fact that there is but one ledge there—at least, but one has ever been discovered or prospected.

With these admitted facts, the question to be determined is, what ground, if any, passed by the deeds of the thirtieth of April, 1861. The granting words of said deed are as follows :

" Do grant, bargain, sell, and convey unto parties of the second part (McCurdy & Coppers) an undivided —— feet of the interest of the said party of the first part in and to the mining grounds of the Central Company, located on the 22d day of June, 1860, a full description whereof will be found in Book F, page three, of the Mining Records of Gold Hill District."

Here there is a distinct reference to the location made on the twenty-second of June, 1860. That location is of 1,200 feet " on this supposed blind ledge, lying between the Gold Hill ledge and the Back hill ledge croppings, known as Butler's Peak croppings." The granting words of the deed, then, taken in connection with another written paper to which they refer, clearly confine the grant to a ledge or ledges lying between the Gold Hill ledge and the Butler's Peak ledge, and by the most positive implication *exclude* the Gold Hill ledge.   But this *granting* clause is followed by an *explanatory* clause, which is in these words :

" The interest herein intended to be conveyed to include also and carry along with it an interest of equal extent in all the ledges and lodes in which said party of the first part is owner, and which will be reached and prospected by said parties of the second part in their continuation of the tunnel of the ' Gold Hill Tunneling Company,' said continuation commencing at a point four hundred (400) feet in from the mouth of the tunnel."

Now this explanatory clause is entitled to all due weight, and

under the liberal rules adopted by the more modern decisions in the interpretation and enforcement of deeds, it might, perhaps, even have the effect of passing title to that which by no possibility could be understood as having been included within the granting clause of the deed. But, before giving such effect to mere explanatory words, it should appear from the instrument, beyond all reasonable doubt, that it was the intent of the parties using the words to give them such effect. Parties usually describe in the *granting* clause of a deed all that they intend to convey. And no Court should hold that a party by his deed has conveyed more than is described or referred to in the granting clause, unless forced to that conclusion by language in other portions of the deed which clearly and beyond all reasonable doubt shows an intent on the part of the grantor to part with more property than was described in the granting clause. This explanatory clause, although not strictly the *habendum* of the deed, is somewhat similar to the *habendum*, and it appears to us should be construed in the same way.

In the text of Bacon's Abridgment, vol. 4, page 529, title Grant, we find this language : " That the *habendum* cannot pass anything that is not expressly mentioned or contained by implication in the premises of the deed, because the premises being part of the deed by which the thing is granted, and consequently that make the gift, it follows that the *habendum*, which only limits the certainty and extent of the estate in the thing given, cannot increase or multiply the gift."

And in the American note to this part of the text we find these expressions : " It is clear by the current of all the authorities, that an *habendum* may enlarge, expound or qualify, and vary the estate granted in the premises, * * but it must not contradict or be repugnant to such estate."

Now, as the estate granted in the premises of this deed was *between* the Gold Hill ledge and another ledge, to make the explanatory clause *include* the Gold Hill ledge would be to make it *include* that which the premises by necessary implication *excluded*. Thus an absolute repugnancy is brought about between the granting and explanatory clause of the deed.

But necessarily there is no such conflict. If we interpret the

language used in the granting part of the deed and the explanatory clause, aided by the light of the surrounding circumstances which were known to the contracting parties, all difficulty seems to vanish. The location of the twenty-second of June, 1860, was of a blind or unseen ledge, supposed to be central between two other ledges, the existence of which was known and ascertained, or at least supposed to be known and ascertained. But in August, 1860, which was before this deed was made, another location was made upon the theory or supposition that there might be a number of *blind* ledges between the two known ledges. Now, if there were a number of such ledges, the question might arise which one was the *true central* ledge. They might all be between the two ledges, and yet no one in a position exactly central or equidistant from the two known ledges. Hence, it was eminently proper to explain that all lodes discovered by the contractors between the two known lodes should be held as central lodes, and should pass under the general expression, " mining grounds of the Central Co." But it will be contended that the words " ledges and lodes * * which will be worked and prospected by said parties of the second part" are general and comprehensive words, and must include all ledges which are reached and found west of a point 400 feet west of the mouth of the tunnel. It is true such is the natural import of those words, and the meaning which would have to be attached to them if their operation was not restricted by other language in the instrument, and their import explained by surrounding circumstances. In the first place, the granting clause and this clause being in conflict, the granting clause must prevail, unless it is apparent such an interpretation would defeat the intention of the parties. If we look to the circumstances surrounding the parties when the contract was made, it would appear to us altogether probable that they never intended to grant any part of the Gold Hill ledge proper. The grant was for a *blind* ledge or ledges not yet discovered, and the existence of which was problematical. The existence of a Gold Hill ledge seems to have been admitted by all parties. That there was such a ledge, no one seemed to doubt. It is assumed to exist in the location made in June, 1860, and the Company had allowed Coppers & Mills 250 feet for striking and prospecting it.

The deed to Coppers & McCurdy seems to have been made upon the supposition that the Gold Hill ledge had been discovered. Upon this hypothesis, and upon no other, can we reconcile the different clauses of the deed.

Now, if the parties did suppose the Gold Hill ledge proper had been reached and prospected before this deed was made, the grantor did not intend to convey any part of said ledge. As the granting words do not include such ledge, and as the probabilities are at least equal that the grantor, in using the explanatory words, had no idea of including any interest in the front ledge, whether the same had or had not been discovered, we feel bound to confine the grant to what is included within the natural signification of the granting words.

The Court, and not the jury, must interpret written contracts. It is true, that when it is necessary to ascertain the existence or nonexistence of facts to be proved by parol, to enable the Court to interpret a contract, and these facts are contested, they must be submitted to a jury. (See Parsons on Contracts, vol. 2, p. 1 *et sequiter*, and notes.) But in this case there was really no dispute as to the main facts of the case; and admitting all the disputed facts to have been as plaintiff claims, still the proper interpretation of the instrument would defeat the action.

The Court below should have granted the nonsuit asked for by defendants. It is true, the statement of the grounds upon which a nonsuit was asked for are not in such form as would seem most appropriate; but there was an utter failure to show defendants in possession of the ground mentioned in the deeds on which plaintiff founded his right.

The judgment must be reversed. Ordered that the judgment be reversed, and a new trial granted.

---

UPON REHEARING.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

A rehearing was granted in this case, mainly because the point on which it was decided was not discussed in the original argument of the case, and only slightly alluded to in appellants' brief.

On the argument, counsel for respondent made but two points in opposition to the views of the Court as expressed in the former opinion. The one, that the clause which the Court calls an explanatory clause of the deed is not properly explanatory, but is a clause conveying something in addition to what is conveyed by the preceding sentence. The other, is that the word *also* necessarily implies that something is conveyed *in addition* to that described in the preceding sentence, whilst the Court treats the second sentence as not conveying anything in addition, but merely *explaining* what was described in the foregoing sentence.

The two sentences read thus : " An undivided twenty-five (25) feet of the interest of said party of the first part in and to the mining ground of the Central Company, located on the 22d day of June, 1860, a full description whereof will be found in book F, page three, (3) of the Mining Records of Gold Hill District.

" *The interest herein intended to be conveyed to include* also *and carry along with it* an interest of equal extent in all the ledges and lodes in which said party of the first part is owner, and which will be reached and prospected by said parties of the second part in their continuation of the tunnel of the ' Gold Hill Tunneling Company,' said continuation commencing at a point four hundred (400) feet in from the mouth of said tunnel."

In the latter sentence we have italicised those words which we think clearly show that it was intended as an explanatory sentence. If it had been intended to make a conveyance of lodes not included within the description of the first sentence, but something entirely distinct therefrom and in addition thereto, surely the italicised words would have been left out. Any one not wholly ignorant of the use of the English language, would have seen that the italicised words, instead of helping to express the idea contended for by respondent, were plainly at war with that theory. No one would have used those words to express the intention of making a conveyance of something entirely distinct from that described in the preceding sentence.

The word *also* certainly implies something in addition to what has gone before, and we have given it that signification. The location of June, 1860, was only of " *this supposed blind ledge,*" between

two other ledges. Here was only a single ledge between other ledges. The first sentence then only describes a single ledge, but the explanatory words declare in effect that this shall mean *also all* blind ledges between the two outside ledges described in the location of June, 1860.

The former judgment of this Court will stand as the judgment in this case.