[No. 2114]

## THE COPPERMINES COMPANY (A CORPORATION), RESPONDENT, *v.* H. A. COMINS, APPELLANT.

[148 Pac. 349]

1. DEEDS—DESCRIPTION—CONSTRUCTION.

Under the rule that the particular description in a deed
controls as against a general description, a particular descrip-
tion, setting forth the legal subdivisions, limits and defines the
grant as against a general description denominating the estate
conveyed as a designated ranch.

2. DEEDS—CONSTRUCTION—AMBIGUOUS DEEDS.

Where a deed is ambiguous, the court will generally con-
sider the position of the parties and the circumstances and
interpret the language in the light thereof.

3. DEEDS—CONSTRUCTION.

Where a grantor conveys land by metes and bounds, the
circumstances must be very strong to prove that he meant to
convey any other lands than those described.

4. DEEDS—CONSTRUCTION.

In the construction of deeds, explanatory clauses and
descriptive terms must be given weight, and, while they may
go to the extent of passing title, yet before such effect should
be given to them it should appear from the deed beyond all
reasonable doubt that it was the intent of the parties to give
them such significance.

5. DEEDS—CONSTRUCTION—PROPERTY CONVEYED.
> A deed described the land conveyed as commonly called the "Comins Ranch" and by government subdivisions. Fences were beyond the government subdivisions and so constructed as to clearly show that they did not follow the lines of government subdivisions. The abstract of title was limited to the government subdivisions, and the land between the government subdivisions and the fences was not assessed in the name of the grantee. *Held*, that the land conveyed was only the land described by government subdivisions.

APPEAL from Ninth Judicial District Court, White Pine County; *Ben W. Coleman,* Judge.

Action by the Coppermines Company against H. A. Comins. From a judgment for plaintiff, defendant appeals. **Reversed and remanded.**

*Summerfield & Richards,* for Appellant:

The burden of proof is upon the respondent to show its title to the land in dispute. The primary and fundamental principle in the construction of deeds is that the intention of the parties, as expressed in the instrument, taken as a whole and considered altogether, must control. (*Case* v. *Dexter,* 106 N. Y. 548, 13 N. E. 449; *Clement* v. *Bank,* 4 L. R. A. 425; 17 Ency. Law, 2d ed. 4; 13 Cyc. 604, 627; *Railway* v. *Tamplin,* 40 N. E. 960; *Lovejoy* v. *Gaskill,* 14 N. W. 583; *Mittel* v. *Karl,* 24 N. E. 553.)

Of two conflicting descriptions in a deed, or two conflicting parts of the same description, the more certain and definite and the one least likely to be mistaken or inserted inadvertently must prevail. (*Heaton* v. *Hodges,* note, 30 Am. Dec. 735; *Benedict* v. *Gaylord,* 29 Am. Dec. 299; *Clement* v. *Bank, supra; Melvin* v. *Proprietors,* 38 Am. Dec. 384, 387; *White* v. *Gay,* 31 Am. Dec. 224; *Wade* v. *Deray,* 50 Cal. 376.)

A general description in a deed will be controlled and limited by a particular. (2 Devlin on Deeds, 1466, 1467; *Carter* v. *White,* 7 S. E. 473; *Cullers* v. *Platt,* 16 S. W. 1003; *Midgett* v. *Twifford,* 26 S. E. 626; *Prentice* v. *Railroad,* 154 U. S. 163, 38 L. Ed. 947; *Crabtree* v. *Miller,* 80 N. E. 225; *Parker* v. *Kane,* 22 How. 1; *Cummings* v. *Black,* 25 Atl. 182; *Jones* v. *Smith,* 39 N. W. 82.)

In case of doubt, quantity may be an important element in solving the doubt. (30 Am. Dec. 741; *Field* v. *Columbat*, 9 Fed. Cas. 12; *Hostetter* v. *Railroad*, 41 Pac. 330; *Reynolds* v. *Lawrence*, 40 South. 576, 119 Am. St. Rep. 78; *U. S.* v. *Cameron*, 21 Pac. 177; *Wolfe* v. *Dyer*, 8 S. W. 550; *Tewksbury* v. *French*, 44 Mich. 100.)

Courts will give weight to the acts of the parties only in cases where their practical construction of an ambiguous instrument is consistent with the language of the instrument. (*Russell* v. *Young*, 36 C. C. A. 71, 94 Fed. 45; *Kennedy* v. *Lee*, 147 Cal. 596, 82 Pac. 257; *Stone* v. *Clark*, 35 Am. Dec. 370.) Such interpretation is not admissible to defeat language which is definite and certain, nor when it would be in violation of settled rules of construction. (*Oakland Co.* v. *Union G. & E. Co.*, 62 Atl. 915, 921; *Coop. Bldg. Co.* v. *Hawkins*, 73 Atl. 617, 621.) Where the legal intent of a deed is certain, there is no room for construction by acts of the parties. (*New Point Lodge* v. *School Town*, 37 N. E. 650; *Weill* v. *Lucerne M. Co.*, 11 Nev. 200.)

Construing the deed by acts of the parties cannot avail respondent short of the running of the statute of limitations. (*Hastings* v. *Stark*, 36 Cal. 122; *Adams* v. *Child*, 28 Nev. 169, 88 Pac. 1087; *Small* v. *Robbins*, 110 Pac. 1128.)

It is not sufficient that there be some evidence to support a verdict; the judgment and decree of the lower court may be reversed unless there is a substantial conflict in the evidence. (*State* v. *V. & T. R. R. Co.*, 23 Nev. 292; *Rehling* v. *Brainard*, 144 Pac. 170; *Robinson M. Co.* v. *Riepe*, 138 Pac. 912; *Watt* v. *Nevada Cent. R. R. Co.*, 23 Nev. 154; *Ophir M. Co.* v. *Carpenter*, 4 Nev. 354; *Dalton* v. *Dalton*, 14 Nev. 419; *Pinschower* v. *Hanks*, 18 Nev. 99.)

*Brown & Belford*, for Respondent:

Conveyances are presumed to be made with reference to the state of the premises themselves at the time; with reference to the condition of the property and its occupation at the time. (*Sengfelder* v. *Hill*, 58 Pac. 251; *Wade* v. *Deray*, 50 Cal. 380, 382; *Proctor* v. *Maine*, 52 Atl. 936; *Damm* v. *Connley*, 59 Pac. 756.)

The meaning of a deed is most easily ascertained by adopting that construction of it which the parties themselves adopted.  (13 Cyc. 608, 609; *Mulford* v. *La Franc,* 26 Cal. 88; *Pico* v. *Coleman,* 47 Cal. 67; *Truett* v. *Adams,* 5 Pac. 99; *Mitau* v. *Roddan,* 84 Pac. 145; *Hill* v. *McKay,* 94 Cal. 20, 29 Pac. 410; *Grant* v. *Bannister,* 118 Pac. 253, 255; *Paroni* v. *Ellison,* 14 Nev. 60; *Vawter* v. *Newman,* 65 Pac. 135; *Shepherd* v. *Shibbles,* 61 Atl. 700; *Shartenberge* v. *Elby,* 62 Atl. 979; *Smith* v. *Smith,* 40 N. W. 23; *Hart* v. *Saunders,* 105 N. W. 709; *Howaygo Co.* v. *Chicago Co.,* 30 N. W. 913; *Abercrombie* v. *Simmons,* 81 Pac. 209; *Edwards* v. *Brusha,* 90 Pac. 728.)

Description by subdivisions is not controlling unless such a rule is established, and necessary to effect the intent of the parties.  (*Town* v. *Greer,* 102 Pac. 239; *Mayberry* v. *Buck,* 81 Pac. 191; *Hornet* v. *Dumbeck,* 78 N. E. 692; *Armstrong* v. *Bromfield,* 4 Pac. 187; *Rosenberger* v. *Wabash Ry. Co.,* 70 S. W. 395; *Kemple* v. *Hilmore,* 72 Pac. 1100; *Cornet* v. *Greech,* 100 S. W. 1188.)

A subsequent particular description in a deed is not controlling as against a prior general description. (*Barksdale* v. *Barksdale,* 45 South. 615; *Summer* v. *Hill,* 47 South. 566; *Tuthill* v. *Katz,* 128 N. W. 759; *Wittaker* v. *Wittaker,* 74 S. W. 759; *Jones* v. *Maltby,* 13 S. W. 432; *Shepherd* v. *Shibbles,* 61 Atl. 702; *McCombs* v. *Stephenson,* 44 South. 867.)

Any inconsistency in a deed must be resolved most strongly in favor of the grantee.  (*Scott* v. *Michaels,* 28 N. E. 547; *Merriman* v. *Blilack,* 128 S. W. 552.)  In ascertaining what the parties meant by a deed, the balance of probabilities shall control.  (*Weed* v. *Woods,* 53 Atl. 1025.)

Where there is a material conflict in the testimony, the decision of the trial court will be deemed conclusive on appeal.  (*Rawhide Co.* v. *Rawhide Coalition Co.,* 33 Nev. 307; *State* v. *Yellow Jacket S. M. Co.,* 5 Nev. 415; *Carlyon* v. *Lannan,* 4 Nev. 156; *Lewis* v. *Wilcox,* 6 Nev. 215; *Blackie* v. *Cooney,* 8 Nev. 49; *McCoy* v. *Bateman,* 8 Nev. 127; *Menzies* v. *Kennedy,* 9 Nev. 159, 10 Nev. 87; *Barnes*

v. *Sabron*, 10 Nev. 217, 235; *Boskowitz* v. *Davis*, 12 Nev. 468; *Solen* v. *V. & T. R. R. Co.*, 13 Nev. 136; *Hixon* v. *Pixley*, 15 Nev. 479; *Schwartz* v. *Stock*, 26 Nev. 154; *Crane* v. *Wilson*, 22 Nev. 385; *Ford* v. *Campbell*, 29 Nev. 578; *Murphy* v. *S. P. Co.*, 31 Nev. 120; *Turley* v. *Thomas*, 31 Nev. 181.)

By the Court, McCarran, J.:

This is an action commenced by respondent in the district court of White Pine County to quiet title to certain lots of land, the total acreage of which amounts to 64.167 acres.

It appears that in March, 1906, one Corbett entered into negotiations with the appellant Comins and his wife for the purchase of certain lands owned by appellant, and the water rights belonging to them, in what is known as Steptoe Creek, in Steptoe Valley.

On the 24th day of March, appellant and his wife made and executed a deed; the portion of which attempting to describe the lands conveyed is as follows:

"All those lots, pieces, or parcels of land situate on or near Steptoe Creek, in the county of White Pine, State of Nevada, commonly known as and called the "Comins Ranch," and more particularly described as follows: (Here follows description of the land by legal subdivisions.) Containing sixteen hundred (1600) acres of land, more or less; and also all water and water rights appurtenant to the said lands, or in anywise appertaining thereto, and all the right, title, and interest of the said parties of the first part in or to the waters of said Steptoe Creek."

Under agreement, the deed was placed in escrow, and was not delivered until the final payment of purchase money was made, some time during the month of April, 1907.

The respondent company became the successor to Comins in the lands conveyed.

When the final payment was made, appellant vacated the houses and barns formerly occupied by him, and

delivered the same and the possession of the lands to the representative of Corbett.

It appears from the record that at the time deed was made from Comins to Corbett, the former was the owner of nearly four thousand acres, of which the sixteen hundred acres embraced within the legal subdivisions enumerated in the deed constituted a part.   Of the four thousand acres owned by Comins prior to the transaction of March, 1906, only a part had been put under cultivation by the application of waters diverted from Steptoe Creek; and it appears from the record, and from the plats accompanying the record, that a fence had been constructed many years prior to 1906, which, in an irregular way and running in an irregular line, separated the wild, uncultivated land from that land which had been in whole or in part brought under cultivation by the application of the waters from Steptoe Creek.

This fence did not follow the lines of any legal subdivisions of the land owned by Comins, but in an irregular way crossed the southeast quarter of the northeast quarter of section 7, the northeast quarter of the southeast quarter of section 7, the southwest quarter of the southwest quarter of section 8, the northwest quarter of the northwest quarter of section 17, and the southeast quarter of the northwest quarter of section 17, in which subdivisions the land in dispute is located, and which subdivisions are contiguous to certain of the subdivisions enumerated in the deed and conveyed to Corbett.

The accompanying plat (see page 365) illustrates the location of the ground in dispute, the same being marked "Parcel 1," "Parcel 2," "Parcel 3," "Parcel 4," "Parcel 5," and "Parcel 6."   The subdivisions marked "X" are those named in the deed from appellant to Corbett; the subdivisions marked "C" are the lands of appellant.

It is the contention of respondent that the six small tracts of land contained in the legal subdivisions above enumerated, and inside the fence, belong to them under

Township No. 15 North, Range No. 64 East, M.D.B.º M.

Scale: 1 mile to 3¾ inches.

the deed of purchase of March, 1906, although not embraced within the legal subdivisions specifically mentioned in the description of the land set forth in the deed from Comins and his wife to Corbett. Their contention, briefly stated, is that everything inside the fence, which formerly separated the uncultivated lands belonging to Comins from his cultivated lands, was intended to be conveyed by the deed; their strongest ground of contention being that, inasmuch as the deed in its descriptive part mentions specifically the "Comins Ranch," and as that land inclosed by the fence and separated from the uncultivated land was generally known as the "Comins Ranch," they are not confined entirely to the legal subdivisions enumerated in the deed, but, in addition to these legal subdivisions, they became the owners of the additional lands included within the six small parcels within the fence.

On the same day on which the deed was signed by Comins and his wife, an agreement was entered into, in writing, as to the terms and conditions of the transaction, and also describing by legal subdivisions the land to be conveyed. This agreement to sell will hereafter be considered in connection with the deed.

As we view it, this case presents two distinct phases; and these phases must be considered, in order to arrive at a just solution of the situation. The deed which passed from appellant Comins and his wife to Corbett, the predecessor of respondent company, with its general, its limited, and its particular descriptions as to the estate conveyed, presents the first phase. The situation, aims, and intentions of the respective parties, culminating in the agreement to sell, and eventually in the deed of conveyance, constitute the second phase.

[1] Established rules applicable to the construction of deeds may be resorted to in the first of these phases. The particular description in the instrument controls, as against the general description. Hence, that particular description which assumes to set forth the legal subdivisions would limit and define the grant, as against the

general description denominating the estate as the "Comins Ranch."

It is in the second phase of the case that we find the sidelights, as it were, presented in the way of the intentions of the parties, before and at the time of the making of the agreement of sale and the deed, as to what was desired by the purchasing party, Corbett; as to what was intended to be conveyed by Comins; and, finally, as to what was embraced within the agreement arrived at when the instruments were signed.

From the record it is disclosed that Charles S. Chandler, a practicing attorney of Ely, White Pine County, represented, as attorney, the grantee Corbett in all of the transactions with reference to the purchase of the property from the appellant Comins; and, when called as a witness on behalf of the appellant in this case, he testified, both on direct and cross-examination, to a number of significant facts, which, laying aside all other evidence in the case, seem, in our judgment, to make the second phase of the case less difficult.

It was the witness Chandler who drew the deed, and who also drew the agreement entered into between the parties. It was he who passed upon the title of the property from an abstract furnished by appellant Comins, and in that respect the witness Chandler testifies:

"Q. Did you examine the title to the property described in that agreement and deed, for the purchaser, Mr. Corbett? A. Yes, from an abstract.

"Q. What property did that abstract embrace? A. Well, it embraced the land which was included in the deal, or at least it embraced the land which Senator Comins gave us as included in the deal.

"Q. Was the abstract an abstract of title to the land particularly described in the deed—the forties and eighties and quarter-sections described in the deed particularly? A. Yes, sir.

"Q. Did the abstract include any land outside those particularly described in that deed? A. My recollection is that it did not.

"Q. Did you make any objection to the abstract, or demand an abstract of any land other than that particularly described in the deed? A. No.

"Q. And it was upon your examination of the title that the deal was carried through and the payments were made, was it not? A. So far as the title was concerned."

Whatever may have been the transactions or understandings between the appellant Comins and his grantee, Corbett, prior to the 24th day of March, 1906—if there were any such understandings or agreements—the entire matter culminated on the occasion when the deed to the property in question and an agreement to sell were signed by the parties; and the facts and circumstances surrounding the signing of these instruments in the office of the witness Chandler, as testified to by Chandler, constituted what, in our judgment, may be termed the sidelights on the second phase of the case. It appears that at that meeting the witness Chandler, acting as attorney for Corbett, had the instruments prepared and ready for signature, having already obtained from the appellant Comins the description, by legal subdivisions, of the land conveyed. He testified that at that time he supposed they were purchasing all of the land owned by Comins; and at that time, it appears, he first discovered that Comins was the owner of other lands adjacent to those included in the deed and agreement to sell. With reference to this, he testifies:

"Q. What was the form of that contract? A. Mr. Comins gave me the description of the land to be included in the contract and the deed.

"Q. That is, the government subdivisions? A. Yes, and I believe he gave me a plat also showing them. I drew the agreement and deed accordingly; but, in order to take care of any lands that might have been omitted, I inserted in the agreement—and possibly in the deed—a provision, after describing the particular land—something like this: 'And also all other lands situate and being on or

near Steptoe Creek, belonging to the parties of the first part.'

"Q. And it was that clause that Mr. Comins objected to, and that was stricken from the contract as finally signed and in the deed finally made on March 24, 1906? A. Yes, sir."

Testifying further with reference to this, the witness said:

"Q. Why, then, was the effort made on your part to get additional land, Mr. Chandler? A. The reason we made the effort to get additional land was that at the time the transaction was originally made I understood, and Mr. Corbett told me that he understood, that he was getting the entire Comins Ranch, whatever it was; and it was my recollection, or is my recollection, that the lands in controversy were part of the Comins Ranch, and we thought were entitled to them.

"Q. But they were not included in the deed and contract, you considered that they were not, and for that reason you were trying to get them in this deal? A. Not after the contract was drawn, we weren't making any additional effort to get land into the contract.

"Mr. Putnam—I mean at the time the contract was drawn. The Witness—Yes, sir.

"Q. You were at that time trying to get Mr. Comins to agree to let you describe other lands, because you considered you weren't getting all the lands of the Comins Ranch; was that it? A. There was a controversy between Mr. Corbett and Mr. Comins over that situation.

"Q. And you and Mr. Corbett understood at that time that this contract and deed didn't embrace all the lands in the Comins Ranch; that was known at that time by you and Corbett, was it not? A. Yes, sir.

"Q. And it was for that reason that you tried to get Mr. Comins to agree to let you put in additional land, so as to cover all the land, was it not? A. I didn't know to start with that all the lands were not in. Corbett didn't know it, and I didn't know it; but we understood that the

deal was to cover the Comins Ranch. It was owing to Mr. Comins's objection to signing the contract that I learned of it."

The testimony of Chandler, a portion of which is quoted above, can in our judgment result in no other conclusion than at the time of signing the agreement to sell, and the deed, to wit, on the 24th day of March, at which time the appellant Comins and Mr. Chandler, the representative of Corbett, were present, knowledge was brought home to Chandler of the existence of other lands owned or controlled by Comins, which he, Comins, refused to include in the agreement to sell or the deed. Moreover, the refusal on the part of the appellant Comins to sign the instrument until a provision objectionable to him, which tended to include other lands not described by legal subdivisions, was stricken from the instrument, was in our judgment sufficient to charge Chandler, the representative of Corbett, with knowledge of the existence of other lands under the control of Comins; and was sufficient to charge Corbett, the grantee of appellant, and Chandler, his legal representative, with knowledge and notice that the limit of the estate conveyed was embraced within the legal subdivisions enumerated in the agreement to sell, and that the instruments conveyed no greater grant of land.

Respondent's contention that it was understood between the parties that all of the Comins land inside the fence was to be conveyed is untenable, inasmuch as it required no skilled person to see that the fence did not follow the line of legal subdivisions, but, on the other hand, followed the irregular course. The limits of the grant being defined by legal subdivisions, and the fence failing to follow any such subdivisions, the grantee was, in our judgment, chargeable with knowledge, in view of the attitude of Comins at the time of the transaction as disclosed by the testimony of Chandler, that the lines of the estate conveyed were not defined by anything save and except the lines of the legal subdivisions enumerated.

There is another feature disclosed by the testimony

of Chandler, and also by that of the appellant Comins, which to our mind is most significant in this case.

The witness Chandler testifies that, on account of his interpretation of the existing statute with reference to the appropriation of public waters, it was his desire to acquire all of the land on which the waters of Steptoe Creek had been used in order to secure the ownership to waters of that creek.    Either prior to the 24th day of March, 1906—the day on which the instruments in question were signed—or on that day, Chandler secured information that the water from Steptoe Creek, all of which it was his desire to control, had been used on the Comins Ranch in the irrigation of lands other than those described in the legal subdivisions enumerated in the instruments.    And in this respect it appears that one parcel of the land in question in this case, situated in section 7, and upon which water from Steptoe Creek had been applied, was, at the time of the making of these instruments, in the name of Henrietta Comins, daughter of appellant herein.

In this respect, the witness Chandler testified:

"Q. Do you remember, Mr. Chandler, that there were some forties here (pointing to map) in the name of Miss Henrietta Comins, along this ditch, and that you were informed by Mr. Comins that the water had been used on that land, and that that land was not included in the deal?    A. I don't remember where the land was, but I do recall that there was some question about the rights of Henrietta Comins, and I believe we took a deed from her, or something.    My recollection is a little hazy about that, but I think there was a deal after the arrangement had been made, and I think we took some deed to it.

"Q. Refreshing your recollection—wasn't this the fact, that the three forties in section 7, at the bottom of the map here (pointing on the map), were in the name of Henrietta Comins; and that Mr. Comins told you that he had used the Steptoe Creek water in irrigating those forties; and that you told him you desired to obtain any claim that Henrietta Comins might have to the water of

Steptoe Creek, and that, in order to obtain that, Henrietta Comins, prior to the delivery of the deed, deeded this land and her water rights to her father, H. A. Comins, so that the deed from him to Corbett carried her water right on that land? A. I wouldn't be sure as to the precise nature of that deal—I would rather see the papers, which are probably exhibits; but there was a subsequent deal, on account of my objection. I believe, the Senator having told me that water had been used on that land, there was a subsequent deal."

Appellant Comins, in testifying as to this phase, said: "My best recollection is that Mr. Chandler asked me if the waters of Steptoe Creek had been used on any land adjacent to the land I deeded, or contiguous or adjacent— they are comparatively synonymous terms. . I said that there was land that stood in my name and my daughter's name—and I may have said Mrs. Comins's name. I am not positive about that."

"Q. You are not positive whether you told him that there was land that stood in your name or Mrs. Comins's name? A. Yes, I know I said there was land in my name and in my daughter's name, and I may have said there might have been some in Mrs. Comins's name. My recollection is that Mr. Chandler thought that any water right that H. A. Comins and his wife owned there would pass with the deed, but any water right that Henrietta Comins, our daughter, had would not pass with the deed, and that there should be something done to transfer her rights to the water.

"Q. Is that all the conversation? A. No, sir.

"Mr. Belford—Well, go on and finish it then; I have asked you for the conversation. A. I said: 'I am not only willing, but it is right to transfer any water that my daughter may have.' The result was the deed from my daughter.

"Q. Is that all the conversation? A. That was the substance of it."

Following up this transaction, as it appears in the record, we find that whatever water right belonged to

the lands of Henrietta Comins, a part of which appears to be in controversy in this case, was conveyed to Corbett by separate instrument, but this instrument, so far as we are able to determine, did not convey the land.

Mr. Chandler, in testifying as to this on his cross-examination when called as a witness for the respondent company, said:

"Q. As a matter of fact, however, in the case of Henrietta Comins's lands, to which you have referred, you got a conveyance of her water right?   A. My recollection is that she conveyed to Senator Comins, and we, having his deed to us, of course covered that situation.

"Q. That is to say, the water had been used on her lands, and she conveys it to Senator Comins, and he conveyed the water to you without the land?   A. I presume that is so.   I must have taken that chance on that, unless he also conveyed the land.   My recollection is not clear enough to be sure that he didn't.

"Q. If the land is not included in the deed and contract, he did not convey it; did he?   A. My impression is that it wasn't included in that."

[2] In cases of this character, where the instrument of conveyance tends to present a doubtful description, or where, by reason of the terms employed, an ambiguity is presented by the instrument, the general rule is that the court will consider the position of the contracting parties and the circumstances, and will interpret the language in the light of such.   The question for the court to determine, in every instance, is:   What was actually embraced within the mutual understandings of the parties?

Whatever rules a court may attempt to follow in arriving at the correct solution, one thing is certain, that no rule or set of rules which will meet all cases has as yet ever been formulated.   Each case, taken in its entirety, presents circumstances and conditions which must of necessity be taken into consideration in arriving at a just solution.

As to the meeting of the minds of the respective parties in this case, we refer again to the testimony of

the witness Chandler, when called as a witness for the respondent, which, taken together with all of his other testimony, some of which we have set forth herein, is especially significant. He says:

"Well, of course it is very difficult at this time to say absolutely what our different talks were. Senator Comins and I had conversations every day or so, extending over quite a long period of time, during which we mostly disagreed and were not on the best of terms; sometimes both of us losing our tempers."

It is admitted in this case by respondents that during all of the time since the delivery of the deed in question the land in controversy has been omitted from the tax statements made by the respondent to the assessor of White Pine County, and further that the same land has been included in the tax statements made by appellant to the assessing authorities. We would give this latter fact but little consideration if it stood alone; but, taken together with all the other circumstances in this case, which circumstances must be considered by the court in arriving at the solution of the problem, it takes its place as a fact worthy of consideration.

[3] The conveyance in this case was not one by metes and bounds, but was one of even more definite description, namely, by legal subdivisions.

Whatever inference might be drawn from circumstances in this case, it will not do to say that a man might be deprived of his property upon inference alone; and we adopt the expression of the Supreme Court of the United States in the case of *Russell et al.* v. *Trustees of Transylvania University*, 1 Wheat. 432, 4 L. Ed. 129, which, although decided many years ago, has lost nothing of its significance:

"Where A. conveys to B., by metes and bounds, the circumstances ought to be very strong to prove that he meant to convey any other lands than those specifically described, before this court would be induced to set aside one deed, and decree the execution of another."

In the instrument of conveyance in question in this case, the term "Comins Ranch" can in our judgment be

given no greater significance than that it was intended as a general term, and, in a way, explanatory of the estate to be conveyed. But the estate conveyed was specifically limited by the particular description, wherein the property was set forth by enumerating the legal subdivisions of which it was composed. Witness Chandler testifies that when he drew the agreement to sell and the deed he believed, and Mr. Corbett believed, that they were getting all of the land owned by Comins; and it was not until Comins had objected to a clause, inserted in the instrument, which tended to include other lands, that he discovered that Comins was the owner of other lands. It is not unreasonable to suppose, in the light of this statement by the witness Chandler, that when he first drew the instruments he used the term "Comins Ranch" because he supposed that he was getting all of the land owned by Comins. But the record discloses, and it is not a matter of dispute in this case, that Comins was the owner of approximately 4,000 acres in Steptoe Valley, most of which was adjacent to the land conveyed. It will not be contended for a moment that the term "Comins Ranch" would include all of these holdings. And if it is true that the term "Comins Ranch" could not have been intended to include all of the holdings of appellant, where the deed of conveyance specifically limited the estate by mentioning legal subdivisions, we can see no good reason why the general term the "Comins Ranch" should embrace, or be held to contemplate, any greater area than that embraced within the legal subdivisions set forth.

[4-5] While, in the interpretation and construction of instruments of conveyance, explanatory clauses and descriptive terms are entitled to due weight, and while they may, under certain circumstances and under modern rules, go to the extent of passing title, yet before such effect should be given to explanatory clauses or descriptive terms it should appear from the instrument, beyond all reasonable doubt, that it was the intent of the parties using the words to give them such significance.

As was said by Mr. Justice Beatty, speaking for this

court in the case of *McCurdy* v. *The Alpha Gold and Silver Mining Co.*, 3 Nev. 34:

"Parties usually describe in the granting clause of a deed all that they intend to convey. And no court should hold that a party by his deed has conveyed more than is described or referred to in the granting clause, unless forced to that conclusion by language in other portions of the deed which clearly and beyond all reasonable doubt shows an intent on the part of the grantor to part with more property than was described in the granting clause."

This case must be distinguished from the case of *Paroni* v. *Ellison*, 14 Nev. 60, for, while the description in the deed involved in the case under consideration was somewhat similar to that involved in the Paroni-Ellison case, in that case the property was described by metes and bounds, as well as by name; and the court said:

"The testimony, which was properly admitted, clearly shows that the property in dispute is the same that was intended to be conveyed by the deed. * * * The testimony did not, in any manner, contradict the description given in the deed."

In the case under consideration there was no description which could, by any reasonable analysis, be intended to include all of the Comins lands, and if it could not include all of the Comins lands, we can conceive of no process of reasoning by which it should be contemplated to include any greater estate than that specifically set forth by legal subdivisions.

It is distinguishable from another viewpoint, in that from the testimony of Chandler, the strongest and most favorable witness for the respondent company, we learn of a distinct refusal on the part of the appellant Comins to include any greater amount of land than that embraced within the legal subdivisions, a plat and description of which was furnished by Comins to Chandler prior to the signing of the instruments.

The rule asserted by this court in the case of *McCurdy* v. *The Alpha Gold and Silver Mining Co.*, *supra*, applicable to the measure of proof in cases of this character, has never been modified by this court since the time of its

enunciation, the language used by the court in that case, in asserting, as it did, that proof of a greater conveyance than that described or referred to in the granting clause of a deed should be clear and beyond all reasonable doubt, requires no explanation. It is a forceful statement, couched in plain language, and one worthy of reaffirmance here.

It is the contention of the respondent that the aim and object and purpose of Corbett, the original purchaser of the land from Comins, were to secure title to all of the water owned by Comins in Steptoe Creek, and that this was made known to Comins prior to the signing of any instrument.

It is only necessary for us to note, in this respect, that the deed from Comins to Corbett conveyed all of the water owned by Comins in Steptoe Creek, regardless of the land on which it had formerly been applied. The record discloses no claim on the part of appellant to any of the waters in Steptoe Creek; in fact, appellant, in his testimony, admitted the conveyance of all of his right to the waters of Steptoe Creek. Hence, that which Corbett sought to acquire in its entirety, namely, all of the water owned by Comins in Steptoe Creek, was by deed conveyed to Corbett; and respondent's right to and ownership of that water is not questioned by the appellant Comins, in so far as the record discloses.

This appeal is taken from the judgment of the lower court decreeing the land in question to the respondent company; but, as the evidence in this case, as disclosed by the record, fails to come within the rule of proof prescribed by this court in the case of *McCurdy* v. *The Alpha Gold and Silver Mining Co., supra,* the judgment of the lower court must be reversed and the case remanded.

It is so ordered.

Petition for rehearing denied.

[COLEMAN, J., having presided at the trial of the case in the district court, did not participate in the hearing of the matter on appeal.]