(March 3, 1886.)

## HOUSER ET AL v. AUSTIN ET AL.

[10 Pac. 37.]

PRACTICE—SUBMISSION OF ISSUES IN EQUITY.—In equity it is within the discretion of the court to submit both legal and equitable issues to the jury at the same time.

REFORMATION OF CONTRACT.—To authorize the reformation of a written contract on the ground of mistake, the evidence must leave no reasonable doubt in the mind of the court as to the mistake. The mistake must be mutual, and it must appear that both have done what neither intended.

EVIDENCE.—Where a person is proved to have caused a witness to have absented himself from the trial, the presumption arises that the evidence of the witness, if given, would be against his interest.

APPEAL from District Court, Alturas County.

Huston & Gray and R. Z. Johnson (John T. Morgan, of Counsel), for Appellants.

The court erred in submitting to the jury the special issues before the equitable issues in the action had been disposed of, and before the right of respondents to recover, or to any dam-

ages or relief had been determined. (*Webber v. Marshal,* 19 Cal. 457; *Lestrade v. Barth,* 19 Cal. 660, 671; *Arguello v. Edinger,* 10 Cal. 160; *Harrisson v. Jeneau Bank,* 17 Wis. 361; *Estrada v. Murphy,* 19 Cal. 249, 272, 273.) Courts of equity will not reform written instruments unless the mistake or fraud alleged is admitted or proved beyond a reasonable doubt. (2 Pomeroy's Equity Jurisprudence, sec. 859, and note, p. 326; *Stockbridge Iron Co. v. Hudson Iron Co.,* 102 Mass. 45; S. C., 107 Mass. 316, 317; 1 Sugden on Vendors, sec. 11, pp. 212-215; *Sawyer v. Hovey,* 85 Mass. (3 Allen) 331, 333, 81 Am. Dec. 659; *Lyman v. United Ins. Co.,* 17 Johns. 373; *Nevins v. Dunlap,* 33 N. Y. 680; *Gillespie v. Moon,* 2 Johns. Ch. 585, 7 Am. Dec. 563; *Hearne v. Marine Ins. Co.,* 20 Wall. 490; *Howland v. Blake,* 97 U. S. 626; *Ivinson v. Hutton,* 98 U. S. 82; *Insurance Co. v. Nelson,* 103 U. S. 544, 548; *Andrews v. Essex Ins. Co.,* 3 Mason, 10, Fed. Cas. No. 374; *United States v. Munroe,* 5 Mason, 557, Fed. Cas. No. 15, 835; 1 Story's Equity Jurisprudence, secs. 152, 157; *Spare v. Home Ins. Co.,* 9 Saw. 154, 19 Fed. 14; *Lestrade v. Barth,* 19 Cal. 661, 675; *Levins v. Lazzarovich,* 55 Cal. 52, 54; Kerr on Fraud and Mistake, 421, 422.) Conduct or representation to work an estoppel must be with knowledge of the facts by the party sought to be estopped. (*McGarrity v. Byington,* 12 Cal. 431; *Morrison v. Caldwell,* 5 T. B. Mon. 425 17 Am. Dec. 84; *Stuart v, Luddington,* 1 Rand. 403, 1 Am. Dec. 550; *Brewer v. Boston etc. R. R. Co.,* 5 Met. 478, 39 Am. Dec. 694; *Finnegan v. Canaher,* 47 N. Y. 500; Herman on Estoppel, 413, 415, 439; Bigelow on Estoppel, 480, 531, 548; *Reynolds v. Mutual Fire Ins. Co.,* 34 Md. 280, 6 Am. Rep. 337; *Flagg v. Mann,* 2 Sum. 563, Fed. Cas. No. 4847.). The other party must have been ignorant of the truth, and must have honestly relied and acted upon the statement or act which is claimed to work the estoppel. (6 Wait's Actions and Defenses, 684, 685, 694; *Hefner v. Vandolah,* 57 Ill. 520, 11 Am. Rep. 39; Herman on Estoppel, 343; *Steel v. Smelting Co.,* 106 U. S. 456; *Brant v. Virginia Coal etc. Co.,* 93 U. S. 327, 337; *Corning v. Troy Iron etc. Factory,* 40 N. Y. 203.) The alleged admission, act or conduct must have been intended to influence, and must have actually influenced the conduct of the other party. (*Muller*

*v. Pondir,* 55 N. Y. 325, 334, 335, 14 Am. Rep. 259; *Leland v. Isenback,* 1 Idaho, 469, 475; *James v. Wilder,* 25 Minn. 318.)

Lyttleton Price and Arthur Brown, for Respondents.

When there is a substantial conflict in the evidence the supreme court will not disturb the decision of the court below. (Hayne on New Trial and Appeal, 234, 288, and cases cited; *Doe v. Vallejo,* 29 Cal. 390.) The rule is the same where the degree of proof is beyond reasonable doubt as where a preponderance is enough—as in criminal cases. (*People v. Ashnauer,* 47 Cal. 100; *People v. Manning,* 48 Cal. 335; *People v. Gill,* 45 Cal. 285; *People v. Simpson,* 50 Cal. 304; *People v. Montgomery,* 53 Cal. 577.) If appellants are not entitled to recover upon their whole case, errors in instructions as to respondents' case will not be regarded. (*Enright v. Railroad Co.,* 33 Cal. 233; *Hebrard v. Jefferson Co.,* 33 Cal. 290; *Barth v. Clise,* 12 Wall. 401.)

BUCK, J.—On the fourth day of March, 1884, the plaintiffs filed their complaint herein, alleging that they were the owners as tenants in common of certain mining ground in Alturas county, Idaho territory, known as the "Elkhorn lode"; that on the third day of October, 1883, by an agreement in writing, they authorized and licensed defendants Austin and Ervin and one Grant to work and mine, and take and extract, ore from a certain portion thereof, particularly bounded and described in said agreement, upon terms expressed therein; that defendants Austin and Ervin commenced work thereon under said agreement about the third day of October, 1883; that said Grant made a pretended sale of his interest under said agreement to defendant Ross about the said first day of December, 1883, and claims no interest under the same; that plaintiffs Houser, Holton & Hale were nonresidents of this territory, and plaintiff Lewis was absent therefrom during December, 1883, and January, 1884, and that neither of them had any knowledge of the alleged wrongful acts of defendants set out in said complaint; that about December 1, 1883, defendants fraudulently taking advantage of said license to gain admission to said mines without authority or knowledge of

plaintiffs, or either of them, wrongfully entered upon a certain portion of said Elkhorn mine outside of the boundaries of the ground described in said agreement, and wrongfully removed pay ore therefrom, of the value of $10,000; that the portion of ground so wrongfully entered upon by defendants is very rich in mineral-bearing ore, and defendants threaten to continue their said trespass to plaintiffs' irreparable injury, and plaintiffs believe they will so do unless restrained by order of the court; that soon after plaintiff Lewis returned to the territory he notified defendants to desist from said trespass, and they refuse so to do; and that defendants are insolvent; and pray that defendants may be enjoined from entering upon such portion of said Elkhorn mine as is outside of the boundaries set out in their said agreement, and for general relief.

The defendants, answering, deny the trespass, and allege the verbal agreement or contract existing prior to the written one set out in the complaint including the ground in controversy; that the written agreement was intended to contain the same, and that the plaintiff Lewis fraudulently informed them that it did contain the same; that he put them in possession of the same, and received the two-fifths of the ore extracted therefrom as per condition of the written agreement; and that defendants accepted said agreement believing that it included the mining ground in dispute. Defendants also file a cross-complaint, alleging that they received said agreement believing and understanding that it contained the ground in dispute; that the plaintiffs so represented to them falsely, and that they relied on said representation. They further allege, among other matters, that they entered upon said premises under said agreement, and discovered a rich body of ore thereon of the value of $200,000, which they were prevented from extracting by plaintiffs' injunction herein; that plaintiffs had extracted the same and appropriated the same to their use, and that in consequence of said injunction restraining them from working said ore, they had been put to additional expense in the amount of $2,000, in opening other ore bodies under said agreement; and prayed that said agreement might be so reformed as to include the ground in dispute; that they (defendants) be adjudged owners, and entitled to all the said Elkhorn lode on the dip

thereof having its apex within the premises described in said agreement, and the right to mine and remove the same, and for other and equitable relief.

The plaintiffs, answering, deny the material allegations in the amended cross-complaint, and ask that it be dismissed, at defendants' costs, and for further and equitable relief.

Upon the trial of the case a jury was requested by the defendants to try the cause, and, under objection of plaintiffs, the court impaneled a jury, and of his own motion submitted to them the following special questions: "Q. 1. Did the lessees in the lease, or defendants, enter upon the premises in dispute, and mine and extract ore, with the knowledge, consent, and by authority of plaintiff Lewis, or did they enter without his knowledge, consent, or acquiescence? A. They entered and extracted ore with his knowledge, consent, and acquiescence. Q. 2. Did the plaintiffs, or either of them, by themselves or their agents, receive or retain the two-fifths royalty knowing that the ore was extracted by the defendants and Grant from the premises in dispute? A. They did receive it knowing it to be from the ground in dispute. Q. 3. Did the original verbal agreement for the lease include the premises in dispute, viz., all ground northeast of the east tunnel, and was it omitted from the writing either by mutual mistake or fraud of the plaintiffs? A. It did, and was omitted by mutual mistake. . . . . Q. 5. What is the value of the ore the three defendants could have extracted between date of service of injunction, March 8, 1884, and July 1, 1884? A. $53,160. Q. 6. And what was the extra damage by being driven out, and compelled to drive new tunnels to reach ore? A. $1,500." To the admission of the last two questions, to wit, 5 and 6, defendants objected on the ground that the equitable issues should be first settled, and assign the submission of all of said questions at the same time to the same jury as error. In support of this alleged error the appellants cite *Weber v. Marshall,* 19 Cal. 457; *Lestrade v. Barth,* 19 Cal. 660; *Arguello v. Edinger,* 10 Cal. 160; *Harrison v. Bank,* 17 Wis. 361; and *Estrada v. Murphy,* 19 Cal. 249. In *Arguello v. Edinger, supra,* the action was ejectment, and the issue was whether a verbal contract of sale, with delivery of premises, could be set up as a

defense thereto. In sustaining such a defense Justice Field says: "If, upon hearing the evidence, the court should determine that there was ground for relief, it would decree specific performance. If it should refuse the relief, it would call a jury to determine the issues upon a general denial." The case was tried, however, upon the general denials, the demurrer to the equitable defense having been sustained. This question of practice was not at issue, and the suggestion of the court was but *obiter.* In *Weber v. Marshall* the action was also ejectment, and the answer contained both legal and equitable defenses. Special issues involving the various issues, legal and equitable, were all submitted to the jury together, against the objection of plaintiffs, who excepted thereto, and saved their exception in the record. The court, by Baldwin, J., say the submission of all these defenses to the jury was irregular; and add that if the equitable and legal matter is not kept distinct, confusion, embarrassment and delay will ensue. They fail to say, however that the doing so is more than irregularity; and state with especial clearness that a new trial is granted for error in the decree based upon the findings of the jury. In *Lestrade v. Barth, supra,* the same issues in an action of ejectment were submitted, and Field, J., says that in *Weber v. Marshall, supra,* such practice was held to be irregular; but as no objection was taken in the court below, the irregularity will not influence the decision in the case at bar. In *Estrada v. Murphy, supra,* the practice does not seem to have been at issue, but Justice Field indicates that it should be, as he had done in *Arguello v. Edinger, supra.* In *Harrison v. Bank,* 17 Wis. 350, an action involving the reformation of a contract, with issues both legal and equitable, submitted to a jury without objection, Dixon, C. J., says that the correct practice in such cases no doubt is to try the equitable cause first, and afterward the legal; but as that practice was not adopted, we see no absolute impracticability in the course pursued.

To the expressions contained in the above authorities it is replied by respondents that the submission of special issues in cases essentially equitable is a matter of discretion with the court; that the findings of the jury thereon are simply advisory, and not binding upon the conscience of the court; and

that the utmost doctrine of the adjudicated cases is that such a practice is but an irregularity, which has never been adjudged to be sufficient ground to reverse a judgment.

The doctrine of the advisory character of such a practice seems fully determined in *Basey. v. Gallagher,* 20 Wall. 678. Justice Field there says, in a case in which the same practice was adopted as in the case at bar: "The court is not bound to call a jury, and if it does call one it is only for the purpose of enlightening its conscience, and not to control its judgment." In *Lestrade v. Barth, supra,* it is said that this practice is only adopted when the evidence is very contradictory and the question turns on the credibility of witnesses. The only reason given why this practice is not proper is that confusion, embarrassment, and delay may ensue. We are unable to see that any of these objections exist in the case at bar. In the only case (that of *Weber v. Marshall, supra*) in which the practice has been actually adjudicated, it was held simply an irregularity not sufficient to justify a new trial. We have graver doubts of the expediency of submitting equitable issues to a jury at all than we have apprehension of confusion or delay in submitting both legal and equitable issues to a jury at the same time. We are of the opinion that the practice rests in the discretion of the court.

The appellants assign as error the giving of the following instruction: "If it is clearly established, to the satisfaction of the jury, that the verbal understanding and agreement of the parties included all the ground lying northeasterly from the east tunnel, and that the same was omitted from the writing by mutual mistake, then the defendants made out a case entitling them to a reformation of the written lease to make it conform to the verbal agreement, and the jury should find on that issue accordingly." This is claimed as error because it does not say that these facts should appear beyond a reasonable doubt. We cannot determine the correctness of an instruction by segregating it from the entire charge, and considering it alone. In the second instruction the court charged the jury that written instruments cannot be reformed upon a probability nor preponderance of evidence, but only upon a moral certainty of error. In the first instructions the jury are told that mis-

take must appear beyond a reasonable doubt. This is repeated in instruction No. 3. We think the charge is clear and explicit as to the doctrine of reasonable doubt.

The third alleged error is: "The finding of the jury, adopted by the court, that the original verbal agreement for the lease included the ground in dispute, and that it was omitted by mutual mistake, is not supported by the evidence; and that there is no allegation of mutual mistake in the pleadings upon which to base such evidence or finding." We think the allegations in the pleadings are sufficient to sustain the findings, and shall consider the sufficiency of evidence. This seems to be the important question in the case.

In reviewing the evidence we may be aided by segregating the admitted from the disputed facts. Mr. Ervin, the chief witness for the defense, one of the parties defendant, testifies: "I am very familiar with the hill [the *locus in quo*]. Have been around it three years. I first knew east tunnel in May, 1882 [eighteen months before the lease was executed]. Austin had procured a lease which was not satisfactory to us with reference to the ground and the number of men. The ground I wanted was below discovery croppings, which was not included in the first paper. Before the lease was made I had examined only the surface ground. I was acquainted with the other side of the mountain, and tolerably familiar with lessee's tunnel. I asked Lewis to be allowed to work more men, and he said: 'I cannot do this. I have given you all you wanted. You may strike something where you would make $100 a day,' etc. The restriction on the number of men was all that remained unsatisfactory at the time. Austin was gone five or ten minutes when he went with the paper." I. I. Lewis, one of the plaintiffs, testified "that he gave a lease to Austin, one of the defendants, who after keeping it a week returned with it, and said his partners wanted more ground than was described therein. He [Austin] said they wanted the ground to the east tunnel. I made the erasures in the first paper, and interlined it to read: 'On a straight line from shaft No. 3 to mouth of east tunnel' [as appears in the original lease]. I had copies made of the lease as amended. Austin went away, and on the next day returned with Ervin and Grant. Austin introduced

Ervin to me. We signed the papers. Ervin remained a short time, and talked about the ground." From this evidence, undisputed, we find that the plaintiffs were particularly anxious to limit the work of defendants to three men, and within a prescribed area; that the matter of the east tunnel as a limit was suggested by Austin, one of the lessees; that the original lease was in the possession of lessees for a week before it was altered; that Austin was familiar with the premises in which the mine was situated, and all of it; that Grant worked on the Elkhorn mine, of which the leased premises were a part; that after keeping the original lease a week, with every opportunity and motive to examine the ground, they had it reformed, extending the original limits; that at the time the reformed lease was delivered to them they were all present; that Ervin remained some time after he had received a copy as amended, and talked about the enterprise with Mr. Lewis; and that he and the other lessees had an opportunity and abundant leisure to examine its contents; and that after all this, as Ervin testifies, the restriction on the number of men was all that remained unsatisfactory at the time.

There is in the record much contradictory evidence. Mr. Lewis swears that the lease was read and compared by the parties, which Mr. Ervin fully denies. But without stopping to weigh conflicting evidence, and accepting the above testimony of Mr. Ervin as true, we may presume that he has omitted nothing which would be of benefit to the defendants' case.

It is argued that the conduct of the plaintiffs in paying money to the witness Grant, with the apparent purpose of hiring him to be absent at the trial, which purpose is not denied or explained by plaintiffs, together with the manner in which the affidavits upon which the injunction was granted were obtained, are presumptions against the plaintiffs' case sufficient to justify the finding of the jury. The sentiments of the court are entirely in accord with those expressed by the attorneys for respondents as to the reprehensible character of such practices. Fortunately for the reputation of the profession, we find no cases in the American Reports where it has been necessary to consider the weight of this class of presumptions in the trial of causes, and we are glad to be able to say that no attorney

or counsel of record connected with this case is responsible for such a necessity now. Best on Evidence (section 411) says that in the case of *Annesley v. Earl of Anglesea,* 17 How. St. Tr. 1430, in which the defendant caused the plaintiff to be kidnaped and sent to sea, and afterward endeavored to take away his life upon a false charge of murder, one of the judges say that these facts spoke more strongly in proof of plaintiff's case than a thousand witnesses. The case was undoubtedly an aggravated one, and the doctrine stated with exceptional force. 1 Phillips on Evidence, *639, says: "Where a person is proved to have suppressed any species of evidence, the presumption will arise that if the truth had appeared it would have been against his interest, and that his conduct is attributable to his knowledge of this circumstance." Applying this rule, and admitting that the evidence of Grant if present would have fully corroborated that of Ervin, we are of the opinion that the facts, as admitted by Ervin and corroborated by Grant, would not be sufficient to authorize the reforming of the lease. The fact that defendants were well acquainted with the ground, and had ample opportunity to know the precise language of the lease— opportunities which they ought to have improved, if they did not—leaves a doubt in the mind of the court, which they think is a reasonable one, that any mistake was made as to the terms of the lease or the premises described in it. In *Hearne v. Insurance Co.,* 20 Wall. 490, the court say: "The party alleging mistake must show exactly in what it consists and the correction that should be made. The evidence must be such as to leave no reasonable doubt in the mind of the court as to either of these points; the mistake must be mutual and common to both parties. It must appear that both have done what neither intended." To the same effect are *Cox v. Woods,* 67 Cal. 317, 7 Pac. 722; *Mead v. Insurance Co.,* 64 N. Y. 453; *Wachendorf v. Lancaster,* 61 Iowa, 509, 14 N. W. 316, 16 N. W. 533; *Fowler v. Adams,* 13 Wis. 459; *Lake v. Meacham,* 13 Wis. 355; 2 Pomeroy's Equity Jurisprudence, sec. 859; 1 Story's Equity Jurisprudence, secs. 152-157.

The respondents argue that it being admitted that the apex of the ore body in dispute is within the area described in the lease, the lessees have the right to follow the vein outside their

side lines into the disputed ground. After an examination of the authorities cited in support of this theory, we are of the opinion that the lease gives the defendants a license to remove ore from within the prescribed limits, and does not constitute a grant which authorizes the defendants to follow the vein outside of the area described in the lease.

The appellants urge that the fourth instruction was error, to wit: "If the jury find that Lewis told the lessees that their lease extended to the east tunnel, and the lessees so believing went to work therein with the knowledge of the plaintiffs, and developed an ore body; and that plaintiffs received their royalty from the ore sold therefrom; and that the defendants expended a large amount of labor thereon, so that at the time of the commencement of this suit there was ore of the value of ten thousand dollars on the dump extracted by them—then Lewis and the plaintiffs would be estopped and prevented from claiming that the lease did not include the ground in the east tunnel."

The appellants claim that this instruction is error in that it fails to state that the party to be estopped must have had knowledge that his conduct or representations were false, and that the party claiming the benefit of the estoppel was ignorant of the truth, and honestly relied and acted upon the statement or act which is claimed to work the estoppel. We think the authorities clearly establish that this instruction is error. While under a mutual mistake, under the circumstances of this case, the interest of the defendants in the ore upon the dump at the time they received notice of the mistake would probably be determined by the terms of the lease, yet we think the adjudicated cases would not extend the estoppel beyond that limit. (*Brewer v. Railroad Corp.*, 5 Met. (Mass.) 478, 39 Am. Dec. 694; 6 Wait's Actions and Defenses, 683, 689, 703, 707, 714; *Morrison v. Caldwell*, 5 T. B. Mon. 426, 17 Am. Dec. 84; *McGarrity v. Byington*, 12 Cal. 431; *Stuart v. Luddington*, 1 Rand. 403, 10 Am. Dec. 550, 552; *Finnegan v. Carraher*, 47 N. Y. 500; Herman on Estoppel, secs. 413, 415, 439; Bigelow on Estoppel, secs. 480, 531, 548; *Reynolds v. Insurance Co.*, 34 Md. 280, 6 Am. Rep. 337; *Hefner v. Vandolah*, 57 Ill. 520, 11 Am. Rep. 39; *Steel v. Smelting Co.*, 106

U. S. 456, 1 Sup. Ct. Rep. 389; *Brant v. Iron Co.,* 93 U. S. 326; *Corning v. Factory,* 40 N. Y. 203.)

Judgment reversed and cause remanded for a new trial.

Hays, C. J., concurring.

Broderick J., expressing no opinion.