No. 19,028.

EMMA A. PARKS, *Appellee,* v. CHALOTTE BAKER et al.. *Appellants.*

SYLLABUS BY THE COURT.

EJECTMENT—*Findings of Fact—Ambiguous Description—Parol Evidence—Property Sufficiently Identified.* Findings of fact based on parol evidence relating to the situation and condition of property ambiguously described in a deed, the conduct of the parties to the deed when negotiating the sale, and the practical construction given the instrument by the parties to it, considered, and *held,* to explain the ambiguity and identify the property.

Appeal from Washington district court; JOHN C. HOGIN, judge. Opinion filed October 10, 1914. Reversed.

*Andrew S. Wilson,* of Galena, and *J. W. Rector,* of Washington, for the appellants.

*Edgar Bennett,* and *Charles Smith,* both of Washington, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action in the district court was one of ejectment. The controversy arose out of the uncertainty of the true location of lot and block lines in the city of Washington and an ambiguity in the description contained in the deed under which the defendants claim title and hold possession. At the trial the court excluded parol evidence material to a proper interpretation of the deed and rendered judgment for the plaintiff. On appeal to this court the judgment was reversed and the cause was remanded for a new trial. (*Parks v. Baker,* 81 Kan. 351, 105 Pac. 439.) On the return of the case to the district court judgment was again rendered for the plaintiff and the defendants appeal.

The facts aside from those developed by the parol evidence are stated in the opinion of the court disposing of the first appeal and need not be repeated here. Upon the parol evidence introduced at the second trial the court made the following findings of fact:

"At the time of the making of said conveyance [to Mrs. Baker] a fence extended from a post on the north line of these lots to the northwest corner of the house occupied by the Calvets and being the property of the wife; that at or near the southwest corner of said dwelling there was a well and from about the center of the south side of this well there extended a fence to an alley extending east and west along the south end of the lots. This fence, with the west end of the house, formed the east boundary of an enclosure which was supposed to include nearly all of lots 12 and 13; that on or about the 10th day of January, 1892, the defendants Baker

took possession of the dwelling house on lots 12 and 13 and remained in the undisturbed and open possession of said dwelling and the land in the enclosure heretofore described extending to the west line of plaintiff's house, ever since, up to and including the time of the commencement of this action; and that plaintiff and defendant have used the well at the southwest corner of plaintiff's dwelling in common up to and including the time of the beginning of this action.

"That at the time of the conveyance above mentioned, and for a long time prior and up to and including the present time there was and is great uncertainty and doubt as to the location of the lot and block lines of the city of Washington; that during the negotiations leading up to the sale the defendant Mrs. Baker and her husband examined the premises and were shown the property by Mr. and Mrs. Calvet, but at that time neither the Calvets nor the Bakers knew where the lot lines were and both knew that there was a general uncertainty of lot and block lines in the city of Washington. . . . That shortly after the making of said deed [to Mrs. Parks] the plaintiff took possession of the house on lot 11 which had been occupied by the Calvets at the time of making their deed, and of all the premises east of the fence situated on a line with the west side of said dwelling house, and have remained in the undisturbed and open possession of said premises ever since; that plaintiff made no claim to any of the premises west of the fence situated on a line with the west line of her dwelling house until shortly before the commencement of this action, when she demanded a strip of land sixteen and one-half feet wide from the east side of the premises occupied and claimed by the defendant, west of the west end of the house and the connecting fence above referred to. . . . That in addition to the fence, which in connection with the west line of plaintiff's dwelling house, formed the enclosure spoken of in the original findings of fact there was also a fence along the south, west and north side of the Baker premises which formed the enclosure heretofore spoken of; that said fences, or substitutes therefor, have stood in practically the same location from the time the Bakers bought the property of Calvets down to the time of the commencement of this action; that after the Bakers moved into the house purchased from Calvets they cultivated the land enclosed within said fence

up to or near the west side of what is now the plaintiff's house, plowing it, setting out trees and small fruit thereon and cultivating the trees until they had become so large as to interfere with cultivation.

"That shortly after the conveyance to the Bakers the Calvets moved into another part of the city of Washington and rented the house which they afterwards sold to the plaintiff, but that the Calvets frequently visited the premises thereafter and also visited the Bakers, and knew that the Bakers were occupying and cultivating the land up to or near the west side of the house which they sold to plaintiff; and that said Calvets never made any objection to the Bakers occupying said premises. up to said house or cultivating the same in any manner they chose."

From these findings it is clear that when the sale was negotiated the Bakers were shown the property inside the enclosure by the vendors, the Calvets, that the Bakers took possession of such property with the knowledge and acquiescence of the Calvets, occupied and cultivated it with the knowledge and acquiescence of the Calvets for some twelve years before the Calvets sold the adjoining property to Mrs. Parks, and that the claim of Mrs. Parks to a part of the enclosure was an afterthought occurring some years subsequent to her purchase of the property east of the enclosure. The property intended to be described in the ambiguous deed to Mrs. Baker is thus identified by its situation and condition, by the conduct of the parties at the time the sale to the Bakers was negotiated, and by the practical construction given the Baker deed by the parties to it, who acted in ignorance of the true lot lines when framing the instrument.

The result is that the true starting place of the description contained in the Baker deed was the point north of the west end of the house as indicated by the post at the north end of the fence, and the mistaken reference to the north line of lot twelve instead of the

north line of lot eleven, which created the ambiguity, should be disregarded.

The judgment of the district court is reversed and the cause is remanded with direction to enter judgment for the defendants on the findings of fact.