(No. 5330.   February 26, 1930.)

J. H. GOULD and CATHERINE GOULD, Appellants, v.
A. FRAZIER and ISABELL FRAZIER, His Wife, and
MARY F. KNOCKE and LOUIS KNOCKE, Her Hus-
band, Respondents.

[285 Pac. 673.]

T. M. Morris, for Appellants.

S. T. Lowe, for Respondent.

GIVENS, C. J.—One Charles E. Kimmerling owned the northwest quarter of the northeast quarter, section 35, township 10 south, range 27, east Boise meridian; and also the northeast quarter of the northwest quarter of the same section, the two forty-acre tracts thus adjoining each other. March 5, 1923, he gave a deed to Mrs. Frazier, one of the respondents, containing the following description:

"Beginning at the northeast corner of that certain bridge spanning Raft River, in the northeast quarter of the northwest quarter (NE. $\frac{1}{4}$ NW. $\frac{1}{4}$) of section thirty-five (35), township ten (10) south, range twenty-seven (27) east Boise Meridian; running thence about 300 yards in a semi-circular northeasterly direction to what is known as Heglar Gulch; thence in a westerly direction along said Heglar gulch about 250 yards to Raft River; thence in a southerly direction along said Raft River about 175 yards to the point of beginning, containing two acres more or less, all of the said premises being located in the northeast quarter of the northwest quarter (NE. $\frac{1}{4}$ NW. $\frac{1}{4}$) of section thirty-five (35), township ten (10) south, range twenty-seven (27) east Boise Meridian."

After the deed had been delivered to the Fraziers the description was changed, evidently by the Fraziers. Upon Kimmerling discovering the change which increased the acreage granted from a little over two acres to a little over nine acres, he had a conference with Frazier, who admitted that all he desired and all that he had purchased was approximately the two acres first conveyed, and a new deed was accordingly prepared containing the above description. Thereafter on March 1, 1926, Kimmerling conveyed by warranty deed to the appellant Catherine Gould the northwest quarter of the northeast quarter of the above-named section. Isabell Frazier in turn on January 7, 1927, conveyed the land described in the deed given by Kimmerling to her to the respondent Mary K. Knocke.

At the time the Fraziers purchased from Kimmerling they had looked over the premises and thereafter placed certain

buildings on the plot of ground which they thought they were purchasing and which the court found they intended to purchase, and which evidently both the Fraziers and Knockes thought was wholly within the northeast quarter of the northwest quarter of said section. After the Goulds purchased from Kimmerling it was found that the triangular plot of ground, consisting of the two acres purchased by Frazier, lay partly in both forties. The appellants brought suit to quiet title to the entire forty and the respondents Knocke counterclaimed, seeking to quiet title to their triangular piece of approximately a little more than two acres.

The transfer from the Fraziers to the Knockes was first shown by a deed executed only by Isabell Frazier. A subsequent deed containing the same description was given, signed and executed by both Mr. and Mrs. Frazier on July 30, 1926.

█ Appellants' first point is that this deed was erroneously admitted in evidence because it was executed after the commencement of the action. Appellants cite no authorities in support of this proposition and no prejudice is shown to have resulted from its admission. The issue was clearly drawn in the pleadings as to the point at issue, namely, whether the original deed from Kimmerling to Mrs. Frazier and in turn the deed from the Fraziers to Mrs. Knocke contained an incorrect description through mutual error or mistake. The appellants had full opportunity to meet this issue and furthermore at the time of the introduction of this deed counsel for appellant withdrew his objection to it, merely calling attention to the fact that it was executed after the commencement of the action.

█ There is no real dispute between the parties as to the law that where a deed is ambiguous or contains an erroneous description through mutual mistake, parol evidence is admissible to show the true intent of the parties. (*Bowers v. Bennett*, 30 Ida. 188, 164 Pac. 93; *Udelavitz v. Ketchen*, 33 Ida. 165, 190 Pac. 1029; *Hayes v. Flesher*, 34 Ida. 13, 198 Pac. 678; *Exum v. Portneuf-Marsh Valley Irr. Co.*, 38 Ida. 155, 220 Pac. 112; *Koon v. Empey*, 40 Ida. 6,

231 Pac. 1097; *Parks v. Baker,* 93 Kan. 121, 143 Pac. 416; *Copper Mines Co. v. Comins,* 38 Nev. 359, 148 Pac. 349; *Egelund v. Fayter,* 51 Utah, 579, 172 Pac. 313; 18 C. J., p. 260.)

The description in the second deed given by Kimmerling to Mrs. Frazier was ambiguous in that the exact course of the semi-circular line is not stated nor the exact point on Heglar gulch. There was testimony with regard to the conversations between Kimmerling, Frazier and Winterburn, who was a scrivener in the office of Mr. Wright, where some of the instruments were drawn, showing that Kimmerling intended to convey to the Fraziers and the Fraziers intended to buy the triangular strip of land upon which they and the Knockes placed the buildings, and that this triangular plot of land was thought to be covered by the description in the deed given by Kimmerling to Mrs. Frazier. There was thus sufficient evidence to authorize the court in concluding that there was a mutual mistake, and in quieting title to this triangular strip of land in respondents.

Appellants cite some authorities to the effect that equity will not relieve against a mistake when the party complaining was negligent in not availing himself of all his opportunities for information. (23 R. C. L. 349, 350; *Dolvin v. American Harrow Co.,* 125 Ga. 699, 54 S. E. 706, 28 L. R. A., N. S., 785, 885.) This statement of the rule is too broad. In the words of Pomeroy:

"It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be that the neglect must

amount to the violation of a positive legal duty.'' (Pomeroy's Equity Jurisprudence, 4th ed., sec. 856.)

Every mistake involves some degree of negligence. We are satisfied from a study of the authorities that the negligence shown by the facts of this case is not sufficient to warrant a court of equity refusing relief. (*Gralapp v. Hill,* 205 Ala. 569, 88 So. 665; *Burch v. Driver,* 205 Ala. 659, 88 So. 902; *Ayers v. Buswell,* 73 Mont. 518, 238 Pac. 591; *Cox v. Hall,* 54 Mont. 154, 168 Pac. 519; *Welch v. Johnson,* 93 Or. 591, 183 Pac. 776, 184 Pac. 280; *Sanders v. Hickman,* (Tex. Civ. App.) 235 S. W. 278.)

The last point urged by appellants is that the finding of mutual mistake was insufficient. The finding made is substantially the same as that approved and held sufficient in *Hayes v. Flesher,* 34 Ida. 13, 198 Pac. 678.

The judgment is affirmed. Costs awarded to respondents.

Budge, Lee, Varian and McNaughton, JJ., concur.