527 P.2d 1252

Floyd COLLINS and Irene Collins, husband and wife, Plaintiffs, Appellants,

v.

Ralph PARKINSON et al., Defendants-Respondents.

No. 11541.

Supreme Court of Idaho.

Sept. 5, 1974.

Alvin Denman, of Denman, Reeves & Ohman, Idaho Falls, for plaintiffs-appellants.

M. B. Hiller, of St. Clair, St. Clair, Hiller & Benjamin, Idaho Falls, for defendants-respondents.

E. J. Soelberg, pro se.

DONALDSON, Justice.

This quiet title action arises from a dispute over ownership of a piece of land involved in two distinct, conflicting transactions.

On September 15, 1965, E. J. Soelberg, respondent, entered into a real estate sale contract with Ralph and Theda Parkinson, husband and wife, who are co-respondents. The contract involved a parcel of rural land near the Arco Airport in Butte County, Idaho. This property was the community property of Soelberg and his wife Exie. Mr. Soelberg signed the contract along with Mr. and Mrs. Parkinson in 1965 and the Parkinsons have farmed it continuously since that time. Mrs. Soelberg signed the contract in 1972, after the commencement of this action, and the contract was recorded at that time.

In 1969 the Soelbergs conveyed certain unimproved land, supposedly adjacent to the land previously sold to the Parkinsons, by a quitclaim deed to Floyd and Irene Collins, husband and wife, appellants. The deed was signed by both Soelbergs and subsequently recorded in February, 1969. The deed was to complete a 1958 transaction between Mr. Soelberg and Mr. Collins. In 1958, for various considerations, Mr. Collins was to have received approximately six and one half (6½) acres of ground near the airport from Mr. Soelberg. Collins subsequently determined that he had received only three (3) acres and sought completion of the arrangement from Soelberg. The 1969 quitclaim deed was to complete the agreement. In order to prepare the quitclaim deed, Soelberg, an attorney, instructed Collins to obtain a legal description of the land in question. The land to be conveyed was adjacent to land obtained by Collins from Soelberg in 1958 and occupied by Collins from that date. Collins obtained the description for the deed from maps and records in the county recorder's office. Soelberg had the quitclaim deed prepared using that description.

The description in the quitclaim deed included a strip of land which had previously been included in the real estate sale contract between the Soelbergs and the Parkinsons. Thus, in 1972, the inevitable conflict arose as to which party had title to the disputed parcel of land. In July, 1972, Collins brought suit against the Parkinsons and the Soelbergs to quiet title, to enjoin the Parkinsons from trespassing on the property, and for the rental value of the property. The Soelbergs defaulted but that default was later vacated on Collins' motion, and an amended complaint was filed asking for damages against the Soelbergs. The Parkinsons answered and cross-complained against Collins, asking the court to set over to them a certain portion of the property, and asking that title be quieted in accord with the sale contract between the Soelbergs, as sellers, and the Parkinsons, as buyers.

The trial court denied the Collins any relief, and quieted title to the portion claimed by the Parkinsons in the Soelbergs, subject to the Parkinsons' rights under the contract of September 15, 1965. The Collins now appeal from that decree.

In essence, the trial court reformed the 1969 quitclaim deed to exclude the strip of land in controversy. The trial court found the inclusion of the parcel to be a mutual mistake between grantor and grantee and therefore amended the deed to conform with the intentions of the parties. Although appellants present numerous assignments of error, it is necessary to consider only four issues. These are as follows: (1) did the trial court properly consider the remedy of reformation, (2) was parol evidence properly admitted to the issue of mutual mistake, (3) was the standard of evidence as to mutual mistake met by the

respondents, and (4) must the evidence of mutual mistake in the conveyance of community property extend to both the husband and the wife.

■ Before discussing the specific issues, it is necessary to outline the remedy of reformation. Idaho courts have long recognized reformation of instruments to be a proper remedy, given the necessary circumstances. Houser v. Austin, 2 Idaho 204, 10 P. 37 (1886); Bilbao v. Krettinger, 91 Idaho 69, 415 P.2d 712 (1966). In utilizing the remedy, the court is not making a new contract, but rather enforcing the agreement the parties would have made but for the mistake. Exum v. Portneuf-Marsh Valley Irr. Co., 38 Idaho 155, 220 P. 112 (1923). Therefore a court is acting properly in reforming an instrument when it appears from the evidence (the standard of which will be discussed below) that the instrument does not reflect the intentions of the parties and that such failure is the product of a mutual mistake, a mistake on the part of all parties to the instrument.

■■ We turn now to the specific issues. First, the appellants contend that the trial court erred in reforming the deed due to mutual mistake because such theory was not presented in the pleadings. This contention is incorrect. Issues not raised by the pleadings yet tried by express or implied consent of the parties are to be treated as though they had been raised in the pleadings. I.R.C.P. 15(b). The record indicates no objection to the inquiries as to the issue of mistake in preparation of the quitclaim deed. Therefore the issue was properly raised at trial. Moreover, the remedy of reformation was properly utilized by the trial court because the final judgment in an action is to afford the prevailing party the relief to which he is entitled even if that relief is not demanded in the pleadings. I.R.C.P. 54(c); Nab v. Hills, 92 Idaho 877, 452 P.2d 981 (1969).

■ Second, the appellants urge a finding of error in the admission of parol evidence to modify a written instrument. The contention is also not tenable in regard to questions of mutual mistake. The parol evidence rule applies only to integrated writings, and if the mistake is mutual the writing is not integrated. Therefore parol evidence is admissible in this instance. G. Bell, Handbook of Evidence for the Idaho Lawyer, at 197 (2d ed. 1972); Bilbao v. Krettinger, *supra*; Gould v. Frazier, 48 Idaho 798, 285 P. 673 (1930).

■■ Third, we come to the standard of evidence necessary to find a mutual mistake. The party alleging the mistake has the burden of proving it. Metropolitan Life Ins. Co. v. McClelland, 57 Idaho 139, 63 P.2d 657 (1936). This burden will be met only by a showing of mutual mistake by clear and satisfactory evidence, a mere preponderance of evidence will not suffice. Metropolitan Life Ins. Co. v. McClelland, *supra*; Exum v. Portneuf-Marsh Valley Irr. Co., *supra*. In this case the trial court found clear and satisfactory evidence indicating that Mr. Collins and Mr. Soelberg intended an agreement different from that embodied in the quitclaim deed. Mr. Collins was seeking approximately three (3) acres to complete the 1958 arrangement. Mr. Soelberg was willing to convey all the land of his remaining unencumbered in that immediate area, this parcel being somewhat greater than three (3) acres. As noted above, the Parkinsons had been on the land for four years prior to the negotiations for the quitclaim deed. Mr. Soelberg clearly knew of his contract with the Parkinsons. Collins had observed the Parkinsons on the land, farming, making improvements, generally exercising the rights of ownership. It cannot be said as a matter of law that Mr. Soelberg and the Collins intended to include in their agreement the land occupied by the Parkinsons. The land description was not obtained by a survey on the land, but rather by utilization of various maps and records in the county recorder's office. Since the Parkinson-Soelberg contract was not recorded with the county recorder, the description thus obtained was erroneous. Using that land description in the deed precluded the

instrument from characterizing the intent of Mr. Soelberg and the Collins. Rather than conveying all the Soelberg land up to the Parkinson property line, the deed actually purported to convey a parcel of the Parkinsons' property in addition to the unencumbered Soelberg land. Clearly the trial court ruled correctly as to Mr. Soelberg and the Collins.

■ Finally, we come to the issue of whether a finding of mistake as to both husband and wife is necessary to reform a conveyance of community property on the basis of mutual mistake. The controlling case is Metropolitan Life Ins. Co. v. McClelland, *supra,* wherein the Court in regard to the reformation of a mortgage stated as follows:

> "The rule appears to be that to reform a mortgage executed and delivered by the husband and wife upon community property on the ground of mutual mistake, the mistake complained of must be shown to have existed as to both husband and wife, and that such a mortgage cannot be reformed unless the mistake is traceable to the wife as well as the husband. [citations omitted] The foregoing rule is in accord with the well-settled doctrine in this jurisdiction that the husband 'cannot sell, convey or encumber the community real estate unless the wife join with him in executing and acknowledging the deed or other instrument of conveyance, by which the real estate is sold, conveyed, or encumbered.' [citations omitted]." 57 Idaho at 142, 63 P.2d at 658.

The application of the rule to conveyances such as this quitclaim deed is consistent with the equal treatment afforded conveyances and encumbrances (e. g., mortgages) in the community property statutes. I.C. § 32–912. Moreover the rule is in accord with the increased emphasis of late on the

treatment of husband and wife as equal partners in all aspects of the community. In the case at hand there is little, if any, evidence as to the intentions of Mrs. Exie Soelberg in regard to the quitclaim deed. As shown by *Metropolitan Life*, the signature of the wife on the instrument will not establish the coincidence of her intentions with those of her husband.

■ The party claiming mutual mistake must establish by clear and satisfactory evidence the failure of the instrument to express the intentions of the parties to the instrument. In the case of a conveyance of community property the intentions of both the husband and wife must be established. In this case the intentions of Mrs. Exie Soelberg in signing the quitclaim deed have not been established.

The case is reversed and remanded to the district court for new trial as to the issue of mutual mistake on the part of Mrs. Exie Soelberg. If the district court should determine that there was no mistake on the part of Mrs. Soelberg, the quitclaim deed from the Soelbergs to the Collins would then be valid, subject to the prior right of the Parkinsons to purchase the land in question in accordance with their contract of sale.[1] The district court will then have to determine what damages, if any, the Collins are entitled to from the Soelbergs. Costs to appellants.

SHEPARD, C. J., McQUADE and BAKES, JJ., concur.

McFADDEN, Justice (dissenting).

I disagree with the majority opinion which reverses the judgment of the trial court and remands the case for a new trial as to the issue of mutual mistake on the part of Mrs. Exie Soelberg. In my opinion if this case is properly here on appeal [1]

1. The trial court found that the Collins knew of the Parkinsons' actual possession of the land in question at the time the quitclaim deed was prepared. His finding is supported by the record and therefore Collins cannot

qualify as a bona fide purchaser. I.C. § 55–812.

1. I question whether this case is properly here on appeal. The trial court and coun-

the judgment of the trial court should be affirmed.

The case of Metropolitan Life Ins. Co. v. McClelland, 57 Idaho 139, 63 P.2d 657 (1936), is cited by the majority as the authority for reversing the judgment of the trial court. In that case this court, reasoning from the statute that a husband cannot sell, convey or encumber community real estate without the wife also executing and acknowledging the instrument, held that a mortgage executed by the husband and wife as mortgagors could not be reformed on the basis of mutual mistake unless the mistake complained of must have existed as to both husband and wife. In the McClelland case, it is to be kept in mind that the requested reformation of the mortgage was to change the description of the real estate mortgaged from the property described therein, to other real property. In the McClelland case, the mortgage described certain real property as being covered by the mortgage. This property the court designated as Tract A. However, it was the intent that Tract B be described in the mortgage. Thus, although the wife had executed the mortgage covering property in Tract A the wife had never executed any instrument involving Tract B, which tract the mortgage company sought to have covered by reformation of the mortgage. Thus, in the McClelland case this court held that there could be no reformation of the mortgage to cover premises not described in the instrument unless the evidence also established a mutual mistake on the part of the wife.

In the McClelland case, a granting of the reformation would have imposed an encumbrance on land which the wife had not agreed to. In Itkin v. Jeffery, 126 Wash. 47, 216 P. 861 (1923), cited by this court in the McClelland case, granting of the requested reformation would have imposed an additional burden on any interest of the wife. In Adams v. Baker, 24 Nev. 162, 51 P. 252 (1897), a mortgagee sought reformation of a mortgage which contained an erroneous description. Subsequent to execution of the mortgage by the husband alone, the wife filed a homestead on the property. The wife defended the mortgage foreclosure and reformation action on the basis of her claim of homestead. The Nevada court upheld her claim. In Nevada at that time, the husband could execute a valid mortgage by himself on community property. Thus, in Adams v. Baker, the court was also dealing with a case where granting of the request for reformation would have imposed an additional burden on the wife.

In Christensen v. Hollingsworth, 6 Idaho 87, 53 P. 211 (1898),[2] this court has a contention that no reformation of an instrument can be had against a married woman, especially when such reformation is for the purpose of compelling her to convey more property than the instrument already conveys. The court in the Christensen case held against that contention. The court stated:

"Under all of the evidence found in the record, it is clearly shown that it was the intention of the defendants to include said eighty-acre tract in said mortgage, and through the mistake of the draftsman the number of the section was omitted. By the reformation of said mortgage no new right is conferred. It is merely carrying into effect the intention of the parties. If such mistake could not be corrected, gross injustice would result. Equity looks on that as done which ought to be done. The object and policy

sel all consider that the judgment from which this appeal was taken was not the final judgment inasmuch as the judgment specifically contemplated further proceedings would be held as to the claims of Parkinson and wife against Soelberg and wife and Collins and wife concerning damages. This not being a final judgment it was not appealable. I.C. § 13–201; Gerry v. John-ston, 85 Idaho 226, 378 P.2d 198 (1963); Viani v. Aetna Ins. Co., 95 Idaho 22, 501 P.2d 706 (1972); Clear v. Marvin, 83 Idaho 399, 363 P.2d 355 (1961).

2. It is worthy of note that in Metropolitan Life Ins. Co. v. McClelland, supra, this court neither discussed nor cited Christensen v. Hollingsworth, supra.

of our statutes in regard to the transfer or conveyance of the separate property of the wife, or of the property on which the husband and wife may reside, are not controverted or thwarted by permitting such reformation. (citations omitted) A mistake in the description of land intended to be conveyed or mortgaged by a married woman may be corrected upon a proper showing." 6 Idaho at 91, 53 P. at 212.

However, in the instant case, where the respondents' defenses to the appellants' quiet title action are based in the theory of mutual mistake, unlike the *McClelland* case and the cases therein cited, no greater burden is imposed upon the community real estate; in fact, it is beneficial to the wife in this situation.

In this action the trial court found "that the transaction between the Collins and the Soelbergs did not in any respect involve or contemplate a transfer to the Collins of any interest that the Soelbergs had in the property, contracted to be sold to the Parkinsons and that it was in error, not intended and a mistake of the parties to have included any thereof in said Quit Claim Deed." This finding is supported by the evidence, and in my opinion the trial court's conclusion of law "[t]hat the Quit Claim Deed, executed by the Soelbergs, purporting to transfer all of the lands in question to the Collins, had no legal effect upon the lands contracted to be sold to Parkinsons by Soelbergs," is fully justified by reason of the trial court's findings of fact.

In this case, unlike Metropolitan Life Ins. Co. v. McClelland and Christensen v. Hollingsworth (both supra), recognition by the court of the mutual mistake does not compel the married woman (Mrs. Soelberg) to convey more property than the instrument she had executed already covered.

Under the facts and circumstances of this case, the judgment of the trial court should be affirmed.