555 P.2d 156

**Frank OLSON and Glen Olson, Plaintiffs-Appellants,**

v.

**Herman E. BEDKE and Ruby C. Bedke, husband and wife, Defendants-Respondents.**

**No. 11731.**

Supreme Court of Idaho.

Oct. 8, 1976.

Lloyd J. Webb, of Webb, Burton, Carlson & Pedersen, Twin Falls, for plaintiffs-appellants.

Thomas H. Church, of Church, Church & Snow, Burley, for defendants-respondents.

BAKES, Justice.

This action was instituted by Frank Olson and Glen Olson, lessors, to terminate a ten year lease of approximately 480 acres of farmland with annual cash rental payments of $1,500.00 because the lessees, Herman and Ruby Bedke, had allegedly failed to comply with the material terms of the lease. The district court of Cassia County entered judgment in favor of lessees, dismissing the plaintiffs' complaint on the ground that, assuming the lessors proved all the facts alleged in their complaint and offer of proof made prior to the commencement of trial, they would not prove injury to their reversionary interests sufficient to warrant forfeiture of the lease. We conclude that the lessors' complaint and offer of proof did state facts which, if proved, would establish grounds for equitable relief and therefore we reverse and remand this case for trial.

The lease agreement, executed in March, 1971, contained several covenants wherein the lessees expressly agreed, in pertinent part, to farm the real property in a "good and farmer-like manner in accordance with the usual farming practices of the area;" irrigate and maintain hay land on the property; construct an irrigation system and maintain the ditches and improvements of the irrigation system; and apply to beneficial use "all decreed water on the ranch each year" including "full use of the Rusty Spur Creek water" and to "use and protect all existing water rights." The "existing water rights" referred to include a decreed annual right to water from the Raft River, and all of the waters of Rusty Spur Creek which the lessors, Olsons, allege is a private stream. The lease does not contain a forfeiture clause or any other provision governing the rights of the parties in the event of a breach of its terms.

In October, 1972, Olsons brought suit seeking termination of the lease and dam-

ages, alleging that Bedkes had violated the terms of the lease. The complaint alleged that the defendant Herman Bedke had not farmed the property in a good and farmer like manner in that he used improper irrigation methods, allowed erosion on the property, and failed to control weeds; that because of improper irrigation methods the alfalfa stand was in danger of irreparable damage; that the irrigation system developed by Bedke was inadequate and was not properly maintained; and that he had failed to put the waters of the Raft River and Rusty Spur Creek to full beneficial use so as to protect the water rights appurtenant to the property. Olsons sought a decree terminating the lease, restoring them to possession of the property, and awarding $ 5,000.00 damages. The defendant-lessees answered the complaint and subsequently moved for summary judgment in their favor.

At a hearing held in April, 1974, the trial court originally denied defendant-lessees' motion for summary judgment and issued a pretrial conference order which limited the issues to be tried to (1) plaintiffs' claims of damage to the reversionary interest through failure to farm the property in a good and farmerlike manner, and (2) failure to construct and maintain an irrigation system according to the parties' agreement. There is no record of the pretrial conference proceedings in this appeal record, but it appears that the court eliminated the issues of loss of water rights in the Raft River and Rusty Spur Creek on the ground that, since the waters of the Raft River were being distributed by a watermaster, no rights to Raft River water could be lost and, since Rusty Spur Creek was a private stream, it was not subject to appropriation and the landowner would always be entitled to use it.

On July 24, 1974, the date set for trial, the court ruled that, assuming plaintiff-lessors' allegations were true, the complaint was premature, because seven years remained on the lease and in that time such problems as weed control, maintenance and location of irrigation ditches, and condition of grain crops, could be remedied. Regarding the water rights on the Raft River and in Rusty Spur Creek, the court repeated the opinion it expressed in the pretrial conference, that is, that "you can't lose decreed rights where you have a watermaster in charge or supposed to be in charge of the distribution," and that Rusty Spur Creek being a private stream is not subject to appropriation. The court concluded that the lessors had not alleged injury to their reversionary interest sufficient to warrant forfeiture of the lease nor had they alleged present injury entitling them to damages, and entered judgment in favor of defendant-lessees. The lessors, Olsons, appeal.

We consider first lessors' allegations concerning water rights on the leased premises. Paragraph 1E of the lease agreement contains the covenant that the lessee agreed to "use, i. e., put to beneficial use, all decreed water on the ranch each year. This will include the full use of the Rusty Spur Creek water . . . ." In their complaint, Olsons alleged that Bedke "failed to put the waters of Raft River to full beneficial use so that the water rights of the Plaintiffs [Olsons] have been substantially endangered and he has permitted Rusty Spur Creek to flow at such a fashion that the water rights therein have become endangered and are subject to loss unless immediately remedied."

▇▇▇ Regarding the Raft River waters claim, it is provided in I.C. § 42–607 that, "So long as a duly elected watermaster is charged with the administration of the waters within a water district, no water user within such district can adversely possess the right of any other water user." The trial court was of the opinion that this provision would protect the Olsons' Raft River water rights, since a watermaster was in charge of the distribution of the Raft River waters. However, this statute applies only to loss of water rights through adverse possession and does not affect the

potential loss of water rights through forfeiture, I.C. § 42–222(2),[1] or abandonment, *Gilbert v. Smith,* 97 Idaho 735, 552 P.2d 1220 (1976). Assuming as the trial court did in granting the motion for summary judgment that respondents Bedke had failed to use the full decreed water rights of the Raft River appurtenant to this property as alleged in the complaint, the unused water rights could be forfeited by non-use prior to the end of the lease, to the substantial injury of the reversionary interest. I.C. § 42–222(2).

Plaintiff-lessors Olson also alleged that defendants Bedke had allowed the waters of Rusty Spur Creek, a stream located on the property, to flow off the leased property and into the Raft River, thereby making that water available for appropriation. For purposes of the trial court's decision and in arguing this appeal, the parties have assumed that Rusty Spur Creek is a private stream. However, it appears to us that plaintiff-lessors have alleged a contradiction in terms. By definition, private waters are "located or situated wholly or entirely upon the lands of a person . . .," I.C. § 42–212, and yet Olsons claim in an affidavit filed in opposition to Bedkes' motion for summary judgment that "Bedke has consistently allowed the creek to run into Raft River, thusly intermingling its waters with those of Raft River, and quite possibly making them subject to

control by the Raft River Water Users and the Raft River Water Master, all to the significant damage of the water rights of [Olsons]." Further, the record indicates that Rusty Spur Creek does not arise on plaintiffs' lands, but consists primarily of spring runoff and arises in the mountains on U.S. government property.

■ If, as alleged, waters of Rusty Spur Creek do not arise on plaintiffs' lands and are flowing off plaintiffs' property into the Raft River and, but for Olsons' actions in previous years of capturing those waters and putting them to use on the property, Rusty Spur Creek would have flowed into the Raft River, it is apparent that Rusty Spur Creek cannot be a private stream within the definition of I.C. § 42–212. *Nordick v. Sorenson,* 81 Idaho 117, 338 P.2d 766 (1959); *Maher v. Gentry,* 67 Idaho 559, 186 P.2d 870 (1947); *Jones v. McIntyre,* 60 Idaho 338, 91 P.2d 373 (1939). Nor can it be said that this stream which apparently arises on U.S. government property is water "located or situated wholly or entirely upon Olsons' property.[2]

■■ We note, however, that the record indicates that plaintiff appellants Olson had been diverting and putting to beneficial use the waters of Rusty Spur Creek for some time prior to the lease of this property to Bedkes. While the Olsons cannot base

---

1. "42–222. CHANGE IN POINT OF DIVERSION OR PLACE OF USE OF WATER UNDER ESTABLISHED RIGHTS—FORFEITURE AND EXTENSION—APPEALS.—

   .    .    .    .    .

   "(2) All rights to the use of water acquired under this chapter or otherwise shall be lost and forfeited by a failure for the term of five (5) years to apply it to the beneficial use for which it was appropriated and when any right to the use of water shall be lost through non-use or forfeiture such rights to such water shall revert to the state and be again subject to appropriation under this chapter. . . . "

2. In their offer of proof to the trial court and in oral argument of this appeal, Olsons indicated that Rusty Spur Creek has always been considered a private stream and Olsons

have obtained an adjudication to that effect. However, that claim is not substantiated in the record and, on the contrary, the record before this Court indicates that Rusty Spur Creek is not a private stream within the meaning of I.C. § 42–212. Additionally, if such a decree does exist, it "is not, and cannot be made, conclusive, as to parties who are strangers to it." *Mays v. District Court,* 34 Idaho 200, 207, 200 P. 115, 116 (1921); *Carrington v. Crandall,* 65 Idaho 525, 533, 147 P.2d 1009 (1944). Therefore, if Rusty Spur Creek is allowed to flow into the Raft River as alleged, and an appropriator who was not a party or in privity with a party to the decree begins applying that water to beneficial use, an adjudication that Rusty Spur Creek is a private stream would not be binding on such a person.

their right to the water on a claim that Rusty Spur Creek is a private stream, they have alleged facts which may be sufficient to establish a "constitutional right" appropriation. *Parke v. Bell,* 97 Idaho 67, 539 P.2d 995 (1975); *Nielson v. Parker,* 19 Idaho 727, 115 P. 488 (1911). Such right, if established, would be subject to the requirements that the waters of Rusty Spur Creek be diverted and applied to beneficial use and, like the decreed rights on the Raft River, may be lost by forfeiture or abandonment.

■ It is apparent, therefore, that the lessors have alleged a breach of the express lease covenant that the lessee would "use, i. e., put to beneficial use, all decreed water on the ranch each year," including Rusty Spur Creek water, and as a result of lessees' failure to use these water rights, they are in danger of being lost. The argument pressed by respondents that the Olsons should stand by until the water rights are lost and sue for damages at the end of the lease term is without merit. Water rights are real property, I.C. § 55-101, and as such may be protected by injunction, mandamus or prohibition when threatened by irreparable injury. I.R.C.P. 65(e); *Anderson v. Cummings,* 81 Idaho 327, 340 P. 2d 1111 (1959); and *cf. Heilbron v. Last Chance Water Ditch Co.,* 17 P. 65 (Cal. 1888). Thus, the plaintiffs' complaint alleged facts which if true would have justified equitable relief. The complaint states a claim for relief and should not have been dismissed. *Anderson v. Cummings, supra;* I.R.C.P. 54(c); *and see Collins v. Parkinson,* 96 Idaho 294, 527 P.2d 1252 (1974); *Nab v. Hills,* 92 Idaho 877, 452 P.2d 981 (1969).

■ While the trial court initially eliminated the issue of loss of water rights by the pretrial conference order, it is clear from the record that the sole reason for the exclusion of the water rights issues was the trial court's view of the law. We believe that this case is factually distinguishable from those which have held that the pretrial order is controlling and in the absence of a timely objection to the order a party may not argue the issues decided therein on appeal, *Earl v. Fordice,* 84 Idaho 542, 374 P.2d 713 (1962), and therefore, where a pretrial conference order excludes an issue raised in the pleadings based on an erroneous ruling of law, as here, this Court will review that ruling on appeal. *Pierce v. Melzer,* 199 Kan. 100, 427 P.2d 632 (1967). Additionally, in the offer of proof made by attorney for the lessors, the water rights issues were discussed and in making its ruling the trial court again rejected the claim of loss of water rights as without merit, which indicates that neither the plaintiffs nor the trial court regarded it as a dead issue.

Olsons' complaint also alleged that Bedke employed poor farming practices. The lessees expressly covenanted in the lease to "occupy, care and till the above premises in a good and farmerlike manner in accordance with the usual farming practices of the area, . . ." In their complaint, Olsons alleged that Bedkes had "not farmed the subject real property in a 'good and farmerlike manner in accordance with the usual farming practices of the area' in that he has failed to properly irrigate the property, has allowed erosion to occur on the property, has allowed the weeds on the property to go uncontrolled and generally has not properly attended to the farming of the property; . . ." Clearly, the plaintiff lessors have alleged a breach of the specific lease covenant to farm the premises in a good and farmerlike manner.

■ By its very nature, a lease of farmland imposes affirmative duties on the lessee, the compliance with which is termed good husbandry, which is unlike an ordinary lease which normally would require only that the lessee refrain from acts of affirmative waste. In Thompson on Real Property, it is stated:

"On a demise of farming lands, a covenant is raised by operation of law that they shall be used as such and cultivated in a husbandlike manner; that no waste shall be committed and that the soil shall

not be exhausted by negligent or improper tillage." 3A Thompson on Real Property, § 1273, p. 369.

This rule is also discussed in American Law of Property:

"[T]he tenant [is] liable for waste for affirmative or negligent acts which constitute poor husbandry. In an agricultural community, where the land is useful for farming and is intended to be so used, such a test as good husbandry is probably a most useful one in determining whether the acts of the tenant are or are not reasonable, and consequently whether they are or are not waste." 5 American Law of Property, § 20.9, p. 93.

*See also Eliason v. Eliason,* 151 Mont. 409, 443 P.2d 884 (1968); *Anderson v. Hammon,* 19 Or. 446, 24 P. 228 (1890), cases in which the failure of the lessee of agricultural lands to employ good farming practices, contrary to the lease agreement, was held grounds for forfeiture of the lease; and 49 Am.Jur.2d, Landlord & Tenant, § 1039.

Therefore, if Olsons' allegations concerning Bedke's farming practices are proved, a factual question is raised whether these practices amount to bad husbandry. We hold that if it is found that the lessee is not farming the premises in a good and farmerlike manner as he covenanted in the lease to do, he is committing waste, and his actions may be enjoined, I.R.C.P. 65(e), and the lessor may seek damages, I.C. § 6–201. Again, the plaintiffs' complaint stated a claim for relief regarding the lessees' poor farming practices and should not have been dismissed. I.R.C.P. 54(c). *Collins v. Parkinson, supra.*

While we have held that the lessor may be entitled to equitable relief and damages, Olson further argues that his complaint prayed for a termination of the lease, and that therefore it stated a cause of action based on that ground. Since the lease did not contain any clause providing for termination of the lease in the event of breach or failure to perform lease covenants, the trial court held that the lessors' remedy was for damages at the end of the leasehold period. While it has generally been stated that in the absence of a clause in the lease providing that failure to perform lease covenants shall work a forfeiture, the lessee has no right to terminate the lease, 3A Thompson of Real Property, § 1325 pp. 556–557, neither party to this action, either before the trial court or this Court, has cited or argued the applicability of I.C. § 6–303(3), –(4), and I.C. § 6–316, nor the effect of the repeal of I.R.C.P. 81(a) effective January 1, 1975, upon the decisions of this Court in *Texaco v. Johnson,* 96 Idaho 935, 539 P.2d 288 (1975), and *Willmore v. Christensen,* 94 Idaho 262, 486 P.2d 273 (1971). Since this matter is remanded to the trial court for further proceedings, we note these sections of the Code and the Rules to the trial court in considering further proceedings on the plaintiffs' complaint. *Compare Enders v. Wesley Hubbard & Sons, Inc.,* 95 Idaho 590, 513 P.2d 992 (1973).

Since this case must be remanded for trial, we must address a final argument raised by appellants Olson. I.C. § 1–205. They contend that this lease to the Bedkes is unenforceable because Ruby Bedke, the wife, did not join in its execution as lessee and therefore it is wanting in mutuality and should not be binding on Olsons. This argument is without merit. The rule in Idaho is that a conveyance of community real property not executed by both members of the community is void. I.C. § 9–312; *Fairchild v. Wiggins,* 85 Idaho 402, 380 P.2d 6 (1963), and that such conveyance may not be enforced by the community against the other parties, because it is lacking in mutuality, *Thomas v. Stevens,* 69 Idaho 100, 203 P.2d 597 (1959). However, the rule is equally established that "[i]t is unnecessary for the wife to join with her husband in the execution of an instrument by which community real property is acquired." *Morgan v. Firestone Tire & Rubber Co.,* 68 Idaho 506, 515, 201 P.2d 976, 981 (1948). This trans-

action was the acquisition of a leasehold interest by Bedke as lessee and therefore the failure of Ruby Bedke to join in execution of the lease does not make it unenforceable.

Reversed and remanded. Cost to appellants.

DONALDSON, J., and HAGAN, D. J., concur.

McFADDEN, C. J., and SHEPARD, J., concur in result.